Jasper H. ROBERTS, Respondent,

v.

Ruth E. ROBERTS, Appellant.

No. 25235.

Kansas City Court of Appeals, Missouri.

Feb. 2, 1970.

————◆————

Richard W. Mason, St. Joseph, for appellant.

Newhart & Zahnd, Savannah, for respondent.

HOWARD, Judge.

This is an appeal from the action of the circuit court in granting a divorce to the husband on his petition alleging indignities. The wife has duly appealed to this court contending that the husband's petition failed to state a cause of action and that the evidence adduced is insufficient to show that the husband is the innocent and injured party.

This couple had their first date on Saturday, July 27, 1968. On the following Saturday, August 3, 1968, they had their second date and on the following Tuesday, August 6, 1968, they were married in Nebraska to avoid the Missouri waiting period. They occupied the same bed on Tuesday, Wednesday and Thursday nights. The husband testified that on Friday night he went to bed at 9:00 o'clock and the wife did not follow. At 9:30, he got up and asked the wife if she was not coming to bed. She replied "I aint done a thing around here right." The husband went back to bed and when he woke up early the next morning the light was on and the wife was gone. It developed that the wife had gone to the home of her married daughter. Plaintiff talked to her on the telephone that day (Saturday, August 10, 1968) and told her he thought maybe she had been kidnapped and she replied "Yes, I was kidnapped, you run me off." It is not exactly clear from the husband's testimony whether this conversation with the wife occurred before or after he talked with a lawyer. In any event, he did consult his lawyer on Saturday, August 10, 1968. On Sunday, August 11, the husband took the wife's clothes to her at the home of her daughter, and on Tuesday, August 13, the husband's divorce suit was filed. This was exactly one week after the date of the marriage.

During this brief marriage, the husband bought some paint and the wife painted the kitchen and was proceeding to clean up the house in which the husband had lived as a bachelor for approximately ten years. She testified that it needed painting and a good cleaning. In this process, she moved a rug and apparently did some damage thereto in the moving. The husband says that he had told her not to move the rug. Further, the husband testified that in the process of painting and cleaning the wife neglected a bushel of sweet corn which he had in the sink and which consequently soured.

This is the sum and substance of the husband's evidence as to what transpired during the marriage. The wife's testimony adds very little to this picture because she was not permitted to testify as to communications between herself and her husband. Such proffered evidence was excluded on the husband's objection that it constituted privileged communications. However, the husband's attorney, on cross-examination of the wife, did bring out the

following: "Q. Now, he didn't chase you off from the house that night and threaten you, did he? A. Yes, he did. Q. Was there any loud talking? A. Oh, I wouldn't say it got real loud, no. * * * Q. Are you trying to tell this Court this man laid a hand on you? A. No, I'm not. He just told me to get out, I was trying to take over his home, so I got out." The wife further testified that she had a conversation with her husband about midnight Friday evening, and as a consequence thereof, called her daughter to come and get her. When she left the home, she was wearing pajamas and a housecoat. She waited on the porch about half an hour for her daughter to arrive.

During the pendency of the divorce suit, the parties talked to each other on several occasions. The wife testified that she urged a reconciliation and asked her husband to consult a marriage counselor in connection therewith. The husband denied that there was any discussion of reconciliation but when pressed as to his wife's urging that a marriage counselor be consulted, he responded "Oh, she brought that up." The husband testified that he never called his wife after the separation but that she called him.

On the basis of the foregoing evidence, the wife contends on this appeal that the evidence is entirely insufficient to support the decree or to support the indignities alleged in the petition which she claims are insufficient to state a cause of action for divorce. The petition alleges that the conduct of the wife was such "as to render Plaintiff's life with Defendant, as her husband, intolerable in the following instances: A. Plaintiff and Defendant are socially incompatible; B. Defendant left home of Plaintiff and Defendant of her own free will and without provocation, declaring that she would demand one-half of all of Plaintiff's assets." We do not know what the petition intended to convey when it alleged that the parties were "socially incompatible" but we are reasonably certain that any meaning it might convey to rea-

sonable people could not constitute a ground for divorce under the Missouri statute. The evidence fails to show any attempt on the part of the wife to secure one-half of plaintiff's assets except for an affirmative answer of the husband to a leading question asked by his counsel as follows: "Did she ever make any statement to you regarding obtaining one-half of your property?" The evidence does not reveal what these statements were. We are therefore left with the allegation that defendant left the home of the marriage of her own free will and without provocation and such evidence as may support that allegation.

Section 452.010 RSMo 1959, V.A.M.S., authorizes the granting of a decree of divorce where one spouse "shall offer such indignities to the other as shall render his or her condition intolerable." Since the early case of Hooper v. Hooper, 19 Mo. 355, our courts have uniformly held that this statutory provision is not capable of precise definition but that each case must depend upon its own circumstances; that indignities must amount to a species of mental or physical cruelty and that they must have the effect of rendering the other spouse's condition intolerable. This case points out that given facts might in one instance render an individual's condition intolerable; whereas, in other instances and under a different total circumstantial picture and involving different individuals, those facts might not render the condition intolerable. See also Garton v. Garton, Mo.App., 246 S.W.2d 832; Simmons v. Simmons, Mo.App., 280 S.W.2d 877; Price v. Price, Mo.App., 281 S.W.2d 307; Clark v. Clark, Mo.App., 306 S.W.2d 641; Oliver v. Oliver, Mo.App., 325 S.W.2d 33. It has likewise been repeatedly held that isolated and insignificant incidents which do not amount to a species of mental cruelty cannot rise to the stature of such indignities as will be a ground for divorce. A single incident is normally not sufficient to render one's condition intolerable but a course of conduct is contemplated as being necessary to reach this result and each case

must be considered on its own circumstances. See Clark v. Clark, Mo.App., 306 S.W. 2d 641; O'Leary v. O'Leary, Mo.App., 385 S.W.2d 346; Garton v. Garton, Mo.App., 246 S.W.2d 832.

In the case at bar, we are in fact presented with a single incident and that is the wife's action in leaving the home. The husband in his testimony expressly denied any other complaints. In this court, the husband seeks to justify the granting of a divorce to him on the basis of this one incident alone in reliance on the cases of Smiley v. Smiley, Mo.App., 207 S.W.2d 862, and Markham v. Markham, Mo.App., 429 S.W.2d 320. We do not believe that these cases are in fact authority for this position. The Smiley case involved a collateral attack upon a default divorce decree. It appeared that the wife had secured a decree of separate maintenance in St. Louis and thereafter had removed to the State of Oklahoma. The husband then instituted divorce proceedings in Scott County, Missouri, and had service by publication and his decree was rendered by default. The petition filed in Scott County alleged desertion but the decree was granted on the grounds of indignities. The wife did not learn of the decree until after the expiration of the term in which it was granted and in the collateral attack on this decree, no showing was made as to what evidence was heard by the Scott County judge before the decree was granted. The opinion points out that even though the petition alleged desertion, it was possible that there might have been evidence of such circumstances presented to the Scott County court as would justify and authorize a finding that the desertion did, in fact, render the husband's condition intolerable and that therefore the court in the Smiley case could not say as a matter of law that the Scott County court was not authorized to enter its decree based on indignities.

The Markham case cites the Smiley case but the facts under consideration therein were entirely different. In Markham, the husband took the children and left the home

intending not to return and declaring that he was going to get a divorce. He placed the children in the home of his brother and the wife was unable to see the children except through a screen door. It was in connection with this portion of the evidence that the Smiley case was mentioned. It also appeared that the husband had refused to support the family although he had means available and had unjustly accused the wife of being unfaithful. On this basis the court affirmed the divorce to the wife based upon indignities. This case can have no applicability to the case at bar. In his brief, the husband characterized the separation of the parties in the case at bar as an abandonment. It cannot, of course, be such an abandonment as would constitute an independent ground for divorce because it did not continue for one year prior to the filing of the petition (it only lasted from Friday midnight to sometime Tuesday); there is no showing of an intention on the part of the wife not to return, because she did not take her clothes and personal effects with her and the husband reluctantly admitted and the wife testified that she asked for reconciliation and suggested consulting a marriage counselor. Further, it appears that the separation was not without the consent of the husband because he consulted his attorney concerning a divorce at the earliest possible moment and suit was filed within three or four days; also, he showed no interest in reconciliation. See King v. King, Mo.App., 382 S.W.2d 819; Campbell v. Campbell, Mo.App., 281 S.W.2d 314; and Price v. Price, Mo.App., 281 S.W.2d 307.

It appears that the real contention of the husband is that the divorce decree should be affirmed because "to do otherwise would force the union of an unworkable and unhappy marriage." This contention may have merit in logic but it involves a matter of public policy which is for the consideration of the legislature and not of the courts. The legislature has spoken in Section 452.010, supra, and until such time as the legislature sees fit to change this

law, we must enforce the statute as written. We can only conclude that the husband's petition did not allege and his evidence did not establish such indignities as would rise to a species of mental cruelty and render his life intolerable within the meaning of the statute and cases cited. It therefore follows that the judgment entered below granting the divorce to the husband must be reversed.

At the time the decree was entered, the court announced that temporary allowances, theretofore made in behalf of the wife, were revoked, and the decree so provided. By agreement the court had given the wife $25.00 per week support money and a partial allowance for attorney fees in the amount of $250.00. Additional attorney fees in the amount of $100.00 were allowed at the time of the decree. On the day the wife's motion for new trial was overruled, her application for temporary allowances pending appeal was heard; evidence was presented and the application denied. The wife now complains that this ruling was an abuse of the trial court's discretion.

At the time of the marriage, the husband was a 60 year old bachelor, never having been married. The wife was 50 years old with one previous marriage which ended in divorce. She was the mother of four grown children. In answer to interrogatories, the husband revealed that he was employed by the State Highway Department in the maintenance division; that his annual salary was a little over $4,000.00 a year; that he owned one acre of land with house and garage, purchased in 1960 for $5,500.00 and that it was unencumbered. He owned a 1961 Ford pickup truck and a 1962 Chevrolet four-door automobile, which he valued at $565.00 and $795.00, respectively. They were both unencumbered. He had a bank account in the amount of $2,817.79 at the time of the marriage, and $728.23 at the time of the answers to interrogatories November 18, 1968. At the time of the hearing, he had been injured on the job and was receiving workmen's compensation. It does not appear that these injuries were permanent but the extent thereof is not revealed.

The wife, prior to the marriage, worked as a waitress at a salary of $55.00 per week. She had no bank account or other funds or property other than her clothes. After the separation she returned to this employment and was so employed at the time of the hearing on temporary allowance. At the time of the hearing, her take-home pay was $49.00 and some odd cents per week. She had just finished paying off a hospital bill in excess of $100.00 and was starting to pay on a doctor bill in the amount of $75.00. She testified that she had expenses for medicines of approximately $10.00 per month.

The cases are uniform in holding that (contrary to older statute) the wife does not have an absolute right for temporary allowance, suit money and attorney fees pending a suit for divorce or an appeal therefrom, but that the awarding of such temporary allowance must depend upon the financial necessities of the wife and the financial abilities of the husband to pay. Noll v. Noll, Mo.App., 286 S.W.2d 58. The wife should not be compelled to strip herself of all property in order to prosecute or defend the suit for divorce or an appeal from the judgment rendered therein. Gregg v. Gregg, Mo.App., 272 S.W.2d 855.

As to matters of allowances pending appeal, it has been said that unless the appeal is clearly without merit, the wife should not be denied the means to prosecute her appeal on the ground that the trial court found against her on the trial of the divorce case itself. Price v. Price, Mo. App., 281 S.W.2d 307.

In the case at bar, the wife has no resources other than her take-home pay of less than $50.00 per week. It is apparent that the financing of an appeal would impose a real financial hardship upon her and we can only conclude that she has demonstrated financial need for assistance

with such financing. As to the husband, it appears that he has regular employment with a salary slightly in excess of $4,000.00 per year, plus unencumbered real estate and automobiles and a bank account, together with a deposit with Consumers Cooperative which he values at $1,500.00. Without taking into consideration the increase in the value of his real estate over the last ten years, it appears that as of November 18, 1968, when interrogatories were answered, he had assets with a value in excess of $8,000.00, plus whatever money he had in the bank, plus his salary. Consequently, while the husband is far from rich, it is apparent that he does have some substantial financial resources and that as between the two parties, he can better afford to bear the extraordinary expense of the appeal than his wife. During the pendency of the divorce action, he paid to his wife approximately $475.00 support money, plus $350.00 attorney fees, plus the costs in the circuit court.

■ As was said in Simmons v. Simmons, Mo.App., 280 S.W.2d 877, involving a relatively short marriage between two mature parties, the wife should be reimbursed for any financial losses due to the unhappy marriage but on the other hand, she should not be permitted to show a profit therefrom. In this case, we have a marriage of less than one week between two mature people. The wife received support money during the pendency of the divorce case in an amount to which she agreed. After the separation, she returned to the employment and apparently to the position which she occupied before the unfortunate episode of the marriage. Under such circumstances, we cannot find that the trial court abused its discretion in refusing to make a temporary allowance for support of the wife pending this appeal.

■ However, as to the expenses of the appeal, we can only conclude after a study of the foregoing authorities that the trial court did abuse its discretion in not providing for the extraordinary expenses of the appeal. It appears from the evidence at the hearing on temporary allowances that the brief would cost an estimated $75.00. This is reasonable. At that time, it was also estimated that the transcript would cost $75.00. It now appears from the record that the transcript cost was $94.70. The wife through her attorney requested an attorney fee in the amount of $350.00. This is reasonable. We therefore direct that on remand the trial court enter a judgment for temporary allowance pending this appeal for suit money in the amount of $169.70, being $75.00 for the cost of the brief and $94.70 for the cost of the transcript, and for attorney fees in the amount of $350.00.

The judgment of the trial court granting a divorce to the husband is therefore reversed and the cause is remanded with directions to enter judgment for temporary allowances as above specified and for such further proceedings as the parties may be advised to take.

All concur.