Lois Suzanne CASCIO, Respondent,

v.

Victor M. CASCIO, Appellant.

Nos. 25901, 26012.

Missouri Court of Appeals,
Kansas City District.

Oct. 2, 1972.

Romano, Shapiro & Polsinelli, Anthony J. Romano, Kansas City, for appellant.

Robert H. Kendrick, Kansas City, for respondent.

SHANGLER, Chief Judge.

These consolidated appeals are from two judgments of the circuit court in proceedings ancillary to a divorce action. The appeal in case No. 25,901 is taken by the father from a judgment enlarging and redefining the visitation right of the mother as to their three minor children. The appeal in case No. 26,012 is from a judgment allowing the mother $1200 as an attorney fee and for expenses in connection with the appeal of case No. 25,901.

The decree of divorce was granted appellant, Victor M. Cascio, in July of 1968. He was awarded the permanent custody of the three minor children, two boys and one girl, then 8, 4 and 6 years of age respectively. The terms of that decree allowed the mother, respondent, Lois S. Cascio, the right of visitation each weekend from Saturday at 8:00 o'clock a. m. to Sunday at 8:00 o'clock a. m., and also on Mother's Day of each year. The circumstances which prompted the court at the divorce proceeding to award permanent custody of the children to the father are not palpable to us nor does the record disclose the basis for the unusually rigorous limitation of access to the children imposed upon the mother. Whatever the reason, this much is conceded by appellant: the respondent mother has been and continues to be a fit parent.

Three years later, in June of 1971, Lois Cascio filed a motion to extend the previous order of visitation to encompass, also, every alternate Thanksgiving Day, a two week period every summer and one

week during the Christmas holiday. The appellant then filed his motion, seemingly in retaliation, to deny Mrs. Cascio visitation altogether. This latter motion was not made part of the record, nor was any evidence offered in support of it, and we are therefore without intimation of the grounds alleged for relief. The two motions were tried to the court contemporaneously. Appellant's motion was overruled, but he does not appeal from that judgment.

The motion of Mrs. Cascio alleged two specific changes of circumstance to support her claim to more frequent access to the children: (1) the remarriage of Mr. Cascio and, (2) that she had established a steady and permanent employment and residence. Appellant contends that respondent proved neither, and since any modification of custody requires proof of substantial change of condition affecting the welfare of the children and none was shown, the court's judgment was in error.

While we may agree that, except superficially, Mrs. Cascio's condition of employment and habitation were not shown to have changed since the initial decree, and that Mr. Cascio's marital status was not germane under the proof, a change of circumstance substantially affecting the welfare of the children otherwise appears from the evidence, thus the trial court's judgment extending visitation was validly based. Three years have passed since the initial decree of visitation and the children have aged commensurately. During that time, except for those several occasions when the appellant did not make the children available to her—whether from oversight or petulance—Mrs. Cascio unfailingly and eagerly prepared for the weekly company of the children. She planned methodically how each day of visitation was to be spent, a cultural activity, a picnic, a visit to the planetarium, or perhaps a horse show. These are activities which obviously delight and instruct children. During the Fall the boys were enrolled for art instruction at the Nelson Art Gallery (where Mrs. Cascio was employed) and the girl,

for ballet at the Conservatory, where they attended for an hour every Saturday. Mrs. Cascio and the children dined together in the evening and then spent the night at her well-kept two bedroom apartment.

There is no question here of the fitness of Mrs. Cascio as a parent and therefore as a custodian of her children. We acknowledge that the welfare of the children is the first principle in the determination of child custody as between divorced parents, whether it be for primary custody or access by visitation. The courts recognize that "where both parents are proper persons, not only do both of them have the right to reasonable access to the child, but in fact the child's best interests will be served by making it possible for it to receive the benefits to be derived from association with both of its parents". Schumm v. Schumm, Mo.App., 223 S.W.2d 122, 125 [2]; Davis v. Davis, Mo.App., 354 S.W.2d 526, 528 [5]. The children have reached the time in life when their latent intellectual curiosity and artistic sensibility require particular encouragement and nourishment. The evidence shows Mrs. Cascio has recognized these needs and has undertaken to fulfill them. A child's increased age since the previous order of custody is a changed circumstance a court may consider in modifying visitation where it is evident that the increased association with the parent is beneficial to the child. Wood v. Wood, Mo.App., 400 S.W. 2d 431, 437 [9]; Wilderman v. Wilderman, Mo.App., 260 S.W.2d 317, 318 [1]. It is evident to us, as it was to the trial court, that the children would benefit from the enlargement of visitation entered in judgment and that the mother's continued interest and affection should be encouraged.

As to the judgment for $1200 for suit money and an attorney fee for services to be rendered in the appeal of the judgment modifying visitation, the appellant contends that Mrs. Cascio neither proved her need for such an allowance, nor Mr. Cascio's ability to pay it, nor the na-

ture and value of the legal services reasonably expected to be performed by her attorney. It is the rule that the broad discretion of a trial judge to make an allowance for suit money and attorney fee in such a proceeding is to be exercised in the light of the former wife's necessities and the former husband's ability to pay. Graves v. Wooden, Mo.App., 291 S.W.2d 665, 671 [12]. If the wife has sufficient means to which she may reasonably be expected to turn to prosecute her side of the dispute, the husband will not be required to finance her. Mathews v. Mathews, Mo. App., 337 S.W.2d 529, 535 [8].

Mrs. Cascio testified to a net income of $311.64 per month, augmented by $50.00 per month paid to her by Mr. Cascio—presumably as judicially decreed alimony—and enjoyed a $308.00 savings account balance. In addition, she owned a 1965 Corvair automobile. From the evidence it is apparent that her necessary monthly expenditures virtually took up the monthly resources available to her. It is readily inferable from the evidence that some of Mrs. Cascio's limited funds were spent for the Saturday instruction of the children, an expenditure more consistent with the obligations of the father as general custodian of the children than with those of the mother allowed only restricted access to them. It was Mrs. Cascio's evidence that Mr. Cascio had since remarried and lived with his wife and four children in a $40,000 home which was subject to a $30,000 encumbrance. Mr. Cascio testified that he earned $1260 per month as an insurance executive but his monthly expenses, many of them in the form of unexplained monthly obligations to numerous banks, amounted to $1580.

Appellant seems to suggest that since admittedly, Mrs. Cascio had the $308.00 savings as a ready resource whereas he had none, her superior ability to pay her counsel fees on appeal was demonstrated and the court's judgment assessing them against him was in error. We conclude, however, that under the circumstances in evidence, it would be unfair to require Mrs. Cascio to look to her own means for the expenses of the appeal litigation. The necessity for further expenditures at all results from appellant's own initiative in appealing from a judgment we have found to be sound and just. Mrs. Cascio should not be compelled to strip herself of the savings, virtually her only resource, in order to defend the appeal. Roberts v. Roberts, Mo.App., 450 S. W.2d 469, 473 [2, 3]. As between the parties, Mr. Cascio's resources are superior and he must bear the cost of the continued litigation.

■■ The attorney fee in the adjudged amount of $1200 must be disallowed, however, because excessive under the circumstances. Any such allowance should be in an amount sufficient for the efficient prosecution of the action to a final determination, yet consistent with standards of public approval for the work to be done, the time to be used and the skill to be applied. Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71, 81 [13–15]. In this case, the allowance of $1200 was determined by the trial court, without fresh evidence, on the basis of his recollection of the recently concluded hearing before him on the motion to extend visitation. The appellant argues that there was no competent proof of the nature and value of the legal services to be rendered on appeal and therefore the judgment of allowance of the attorney fee was invalid. We disagree.

■ We have recently reaffirmed the rule (Mince v. Mince, Mo.App., KCD, 481 S.W.2d 610, 1972) that a motion for an attorney fee for services in the trial of a modification of a divorce decree is ancillary to and engrafted on the principal modification action and thus the proof made in the recently concluded principal action— where the evidence is fresh in the mind of the court—may be used as the basis for the attorney fee judgment in the ancillary action. This rule, we observed, "merely appl(ies) to proceedings supplementary and ancillary to divorce actions principles of

judicial notice applicable to litigations generally". Although a motion for suit money pending the appeal is an independent proceeding in the sense that an appeal may be taken from the allowance made, it is also an adjunct of the modification action from which it stems[1] and such proceedings are " 'so interwoven, (and) so clearly interdependent, as to invoke' a rule of judicial notice in one suit of the proceedings in (the) other suit." Wigmore on Evidence, Vol. IX, Sec. 2579; Libbe v. Libbe, 166 Mo. App. 240, 148 S.W. 460, 462 [1].

It is clear from the record colloquy between the court and counsel at the hearing on the motion for the attorney fee that the judge's recollection of the evidence in the recently concluded visitation hearing was fresh and his perception of the legal issue valid. From the record colloquy it is equally clear that in fixing the attorney fee for prospective services on appeal, the trial court took judicial notice of the modification of visitation proceedings and that his judgment rests on that proof. The trial judge knew that Mrs. Cascio alone testified on the motion to extend visitation, and only briefly, and that the trial contention was uncomplicated. From this judicial knowledge he concluded that the issue on appeal would be the "narrow point" of change of circumstances and, inferably, that the time and effort required to fully and competently respond to the appeal would not be exceptional. At the time the motion for attorney fee pending the appeal was heard, appellant's brief had not yet been filed so that the only evidence respondent could have offered to support her motion was as to services yet to be performed. This the court already knew for itself; to have required such evidence from the respondent also would have been a useless redundancy.

▬▬▬ While the judicial knowledge of the proceedings in the modification of visi-

tation proceedings, still freshly lodged in the court's breast, was a rational basis for its determination in the ancillary motion for the attorney fee on appeal, the question remains whether the value attributed to such services was reasonable. Courts are themselves experts on the subject of attorneys' fees (Gross v. Gross, Mo.App., 319 S.W.2d 880, 885 [8, 9]), and this expertise extends to the value of appellate services. The circuit court alone has jurisdiction to make allowances for suit money and attorney's fees by way of alimony during the entire pendency of a divorce action, whether in the circuit court or the appellate court. State ex rel. Kranke v. Calhoun, Mo. banc, 232 S.W. 1038, 1039 [1, 2]; State ex rel. Gercke v. Seddon, 93 Mo. 520, 6 S.W. 342, 343; Wonneman v. Wonneman, Mo.App., 305 S.W.2d 82, 84 [3, 4].

If the controversy is pending in the appellate court, the trial court has jurisdiction to make such allowances at any time between the filing of the notice of appeal and final adjudication. Watkins v. Watkins, 66 Mo.App. 468, 471. The respondent chose to assert her claim for the expenses of the appeal, however, at a stage of the proceedings when the services for which she sought recompense had yet to be rendered. If the respondent expected full allowance for services actually rendered her on the appeal, it was her burden to show their nature and extent "so the appellate court could examine such evidence, in connection with other relevant circumstances, in gauging the propriety of the trial court's discretionary action". Jeans v. Jeans, Mo. App., 300 S.W.2d 870, 873. Since the judgment for the attorney fee on appeal rests only on proof by judicial notice, it should properly reflect only the value of those basic legal services necessary for the routine appeal anticipated by such proof. Our de novo review leads us to conclude that on this basis the allowance for the attorney fee is excessive. We enter that

---

1. State ex rel. Gercke v. Seddon, 93 Mo. 520, 6 S.W. 342, 343; Libbe v. Libbe, 166 Mo.App. 240, 148 S.W. 460, 462

[4, 5]; State ex rel. Kranke v. Calhoun, Mo. banc, 232 S.W. 1038, 1039 [2].

judgment which the trial court should have entered and allow the respondent $750 for those legal services which, under the evidence, is the maximum amount the trial court could reasonably have adjudged.

Accordingly, the judgment in case number 25,901 is affirmed and the judgment in case number 26,012 is affirmed as modified.

All concur.