L_____ E_____ (S_____),
Appellant,

v.

J_____ A_____ E_____,
Respondent.

No. KCD 26699.

Missouri Court of Appeals,
Kansas City District.

March 4, 1974.
Rehearing Denied April 2, 1974.

Sylvester Powell, Jr., and Richard H. Heilbron, Kansas City, for appellant; Heilbron & Powell, Kansas City, of counsel.

John B. Ewing, Jr., Kansas City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This appeal is from a judgment in the court below involving the custody of five minor sons of the parties. The judgment under review changed the custody of these children from the mother-appellant to the father-respondent.

Before reaching the merits of this appeal disposition must be made of a motion filed by appellant to strike respondent's brief, which motion was taken with the case. The basis of this motion is that

such brief contained a statement of facts which was argumentative, inaccurate and otherwise violated the requirements of Rule 84.04(f), V.A.M.R. In our review of the transcript and briefs looking toward a decision on the merits we have kept in mind this motion, and reviewed the appellant's suggestions in support thereof and respondent's opposing suggestions. This whole record is surcharged with the high emotions of the parties and the strenuous, forceful and sometimes emotional advocacy of counsel. Even if respondent's brief were clearly subject to the objections lodged against it (which we do not believe to be the case), no useful purpose would be served by "striking" it. Appellant's motion seeking such an order is overruled.

This matter involves the traumatic circumstance of a bitter tug-of-war between the parents of five boys, now aged 16, 14, 11, 7 and 6 years. The custody of these lads was granted to the mother-appellant in the underlying uncontested divorce action on August 18, 1971, which decree also granted father-respondent visitation rights. The matter before us is an appeal from a judgment of the court below denying the mother's motion to modify the original decree to permit her to remove the children from Missouri to the vicinity of Chicago, Illinois and granting the father's amended motion to modify and awarding him custody of the children, subject to certain rights of visitation vested in the mother-appellant. On these motions the court below held extensive hearings during the course of which it heard the testimony of the parties and thirteen other witnesses and which hearings resulted in a transcript on appeal of 492 pages and the introduction of twenty-seven exhibits. After these hearings and the submission of briefs on the law, the court below made extensive and careful findings of fact and conclusions of law and entered the judgment above noted from which the mother appeals. She urges the reversal of such judgment upon the grounds: 1) the father failed to sustain his burden of proof that the mother was an "unfit" mother to retain custody; 2) the father failed to sustain his burden of proof that the welfare of the children would be best served by granting the custody to him; 3) that there was no evidence of substantial change in circumstances warranting a modification; 4) that the court improperly admitted evidence of an extra-marital affair of the mother-appellant's present husband (the children's stepfather) with another woman occurring prior to the underlying divorce here; and 5) the mother's motion to modify the custody award and permit her to move the children to Illinois should have been sustained since such a move was in their best interest.

In this appeal we review the entire record on both the law and the facts and reach our own independent findings and conclusions. In so doing, however, we accord due deference to the trial court's findings unless they are clearly in conflict with the preponderance of the evidence, disclose an abuse of discretion or are clearly erroneous. This is particularly true upon matters of credibility. Rule 73.01(d), V.A.M.R.; Zimmerman v. Zimmerman, 422 S.W.2d 386, 388–389 (Mo.App.1967); Eissler v. Eissler, 468 S.W.2d 217, 221 (Mo.App. 1971); C—— C—— v. J—— A—— C——, 499 S.W.2d 809, 811 (Mo.App.1973).

In these regards the review of a child custody judgment does not differ from that of any other court-tried case. But in matters involving custody our courts have refined and further defined these general principles. The "guiding star" and the one tantamount and inflexible consideration of both the court below and this court is the present and future welfare and interests of the children involved. It is not our proper function to compare or weigh fault or innocence of the divorced parents, except as such bears upon the custodial welfare of the children. Cascio v. Cascio, 485 S.W.2d 857, 859 (Mo.App.1972); Pelts v. Pelts, 425 S.W.2d 269, 271 (Mo.App.1968); C—— C—— v. J—— A—— C——, supra, 499 S.W.2d at 1. c.

811. In performing this function we can and should indulge the presumption that the trial court considered all the evidence and decreed the custody of the children by what it believed to be in their best interests and, in so doing, we must bear in mind that it was in a better position not only to judge the *credibility* of the witnesses and the persons directly but also their *sincerity* and *character* and other trial intangibles which may not be completely revealed by the record. Graham v. Graham, 428 S.W. 2d 941, 944 (Mo.App.1968); Wagner v. Wagner, 465 S.W.2d 655, 659 (Mo.App. 1971); M— C— A— v. G— H— A—, 493 S.W.2d 660, 663 (Mo.App.1973). Thus, the trial court's findings on the motions to modify custody of the children here involved should not be lightly disturbed. Watkins v. Watkins, 230 S.W.2d 778, 782 (Mo.App.1950); Tootle v. Tootle, 329 S.W.2d 218, 224 (Mo.App.1959); Leaton v. Leaton, 435 S.W.2d 408, 412 (Mo. App.1968).

With these firmly established rules governing the scope of our review in mind we have carefully examined the transcript of testimony, the pleadings and briefs, the findings and conclusions of the trial court, the applicable decisional law cited to us and disclosed by our independent research and we affirm the judgment below.

■ Before reviewing the ultimate facts and reasons leading to this decision it should be noted that the mother-appellant's point that there was not a sufficient showing of change of condition to warrant the exercise of the trial court's judgment is completely without merit. Both parties invoked the court's jurisdiction to that end and the record abundantly supports the fact that conditions of the parties and the children had drastically changed since the divorce.

A review of the evidence before us reveals the following pertinent facts:

The parties were married on March 2, 1957 and were separated on June 27, 1970.

After the separation the plaintiff continued to occupy the family home with the five sons and the father moved into an apartment. There was apparently efforts made by both parties before and after the separation to preserve the marriage.

In February or March of 1971, the plaintiff met one J— S—, a married man and the father of two teenage daughters and this acquaintance developed rapidly into one of sexual intimacy. On May 7, 1971 the defendant and a friend discovered the plaintiff and J— S— in bed in the master bedroom of the parties' home in the early morning hours. The five sons were all then in the home and at least some of them were occupying bedrooms on the same floor level as the master bedroom and along a ten-foot long hall. Both the plaintiff and J— S— asserted that May 7, 1971 was their first sexual experience with each other.

Following this episode and on May 26, 1971, plaintiff filed suit for divorce charging general indignities; a property settlement was reached; defendant did not contest the suit; and a decree was entered in favor of the plaintiff on August 18, 1971. It appears that under the settlement the plaintiff retained the home and was awarded custody of the five sons with visitation rights to the father-defendant.

J— S— was married to his first wife H— S— in 1954; met the plaintiff in February or March 1971 and separated from his wife in June 1971 shortly after the plaintiff had filed her divorce action herein. There was a period of attempted reconciliation when J— S— returned to his wife and family from September to sometime in December 1971. H— S— testified that she received a telephone call from the plaintiff around the first of September 1971. Plaintiff identified herself and asked H— S— why she was letting J— S— come home. When H— S— responded because J— S— was her husband the plaintiff stated "He doesn't love you." Following the second separation in

December 1971, J—— S—— filed suit for divorce from H—— S—— in July 1972 in Kansas; the suit was uncontested and he was granted a decree on October 24, 1972. After the sixty day waiting period required by Kansas law, J—— S—— and the plaintiff were married on December 24, 1972.

During the course of her testimony H—— S——, the first wife testified, that J—— S—— had been involved in another extramarital relationship with another married woman which had put a strain on her marriage and brought the other woman's marriage to the verge of divorce. Correspondence from that woman and her husband confirm this situation.

Plaintiff raises the point that this evidence of S——'s prior conduct and his conduct with plaintiff prior to her divorce was improperly received and considered by the trial court. We do not agree.

■ Plaintiff seeks a modification of the custody award to permit her to remove the children to Oak Brook, a suburb of Chicago, Illinois. This move is necessary because J—— S—— has been transferred there by the company by which he is employed and he has acquired a home there for the plaintiff, and the five boys where he will be the male "head of the household." His past conduct, character and morals are therefore necessarily vital factors for the court's consideration in evaluating the best interests of the children. Blankenship v. Blankenship, 488 S.W.2d 245, 250 (Mo.App.1972); Watkins v. Watkins, supra.

In *Watkins,* a case factually very similar to this matter, the court said (230 S.W.2d l.c. 784):

"In the Coen home the children would have parents whose past conduct cannot be condoned, because each of them has transgressed the basic moral principles of two marriages."

■ It is equally pertinent that the court consider the actions of the plaintiff in her relationship with J—— S—— as such affects the evaluation of her character and morals, and thus in turn the interests of the children. In so doing, we are not limited to any particular point of time but can consider her conduct over the whole period— facts and "conditions" which were not presented to nor considered by the court in the underlying divorce action. Garbee v. Tyree, 400 S.W.2d 193, 195–196 (Mo.App. 1966); C—— C—— v. J—— A—— C——, supra, 499 S.W.2d at l.c. 809, 812.

The record before us discloses a consistent pattern of increasing preoccupation by the plaintiff concerning her relations with J—— S—— at the expense of her children —at all times from February or March 1971. During part of this time both were married to others. In summary, the evidence showed that she was frequently at his apartment until early morning, sometimes all night. Upon such occasions her children were either left alone or with babysitters. She made trips with him to Texas and to the Ozarks. On some of the trips to the Ozarks she would take her sons but when they were left at home she would leave a telephone number of a motel where they could reach her in care of J—— S——.

Her neighbors would frequently see her returning to her home around 6:00 A.M. Her next door neighbor, who had sons who were friends of the older boys here involved, testified the children were often alone and she was upset by the younger ones crying. She and her husband helped the children when possible. The older boys would often prepare frozen dinners for the children at mealtime. Neighbors observed the older boys at home upon occasion during school hours.

At the time of the trial the older boy was failing in school and had experimented with marijuana. There was some evidence that the children were not receiving proper dental care.

The defendant testified that the plaintiff made it difficult for him to exercise his

**686**

visitation rights and was frequently distraught and hysterical.

J—— S—— was a frequent visitor at the home and occasionally ate there and sometimes his car was parked in the driveway until late hours or overnight.

The defendant is a professional man located in Kansas City. Both he and the plaintiff, before the domestic troubles, were active in church, he participated with his sons in various organized activities, sailed with them and his conduct toward them indicates concern and interest. All of these boys have been raised in this area and the father is able to care for them, keep them in their present school districts and among their friends. Plaintiff admitted defendant's fitness as a father but did testify as to an incident involving the defendant and another woman on a camping trip where she said defendant admitted improper relations with this woman. Defendant denied this and we defer to the trial court's judgment as to this conflict in testimony.

We agree with the trial court's finding that the plaintiff's "first and primary concern was furthering her relationship" with J—— S——. To this we would add that she was consistently "bent on her own pleasure." J.S.McC. v. C.R.McC., 501 S.W.2d 539, 541 (Mo.App.1973); Cascio v. Cascio, 485 S.W.2d 857, 859 (Mo.App.1972).

The most convincing indication of this attitude on the part of the plaintiff is the fact that at the time of the trial below she had sold her home and, in response to questions by the court, the following appears:

"THE COURT: Now, I will take it from what you have said, that regardless of the outcome of this proceeding, you will be moving to the Chicago area?

THE WITNESS: Yes, sir."

Few solutions to matters regarding child custody are satisfactory. The very nature of such proceedings are fraught with sorrow and doubt. Rarely does a court have a choice between an entirely good or an entirely bad environment for the children. More frequently the court must choose between two unsatisfactory situations and almost always it is the children who are really deprived of something essential or beneficial in their lives. H—— B—— v. R—— B——, 449 S.W.2d 890, 893 (Mo. App.1970).

 Such decisions must be made, however. We are convinced that the best interests of the children here require that their father be granted their custody. The judgment of the court below is based upon substantial, believable evidence, valid reasons and in accordance with the law and such judgment is accordingly affirmed.

All concur.