K____ R____ (S____) D____,
Appellant,

v.

C____ D____ S____, Respondent.

No. 12685.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 2, 1983.

John S. Pratt, Springfield, for appellant.

Harold F. Glass, John G. Newberry, Springfield, for respondent.

CROW, Judge.

The mother of a three year old boy appeals from a judgment modifying the custody provisions of a decree of dissolution of marriage entered two years earlier.

On February 26, 1980, the marriage of appellant ("mother") and respondent ("father"), was dissolved. Custody of their only child J_____ P_____ S_____ ("child"), born August 19, 1978, was awarded to the mother. The father received temporary custody and visitation rights, and was ordered to pay child support.

On May 31, 1980, the mother married R_____ D_____ ("stepfather").

On June 7, 1980, the father married C_____ ("stepmother"), a cousin of the mother.

On December 4, 1981, the mother filed a motion to modify, seeking permission to change the child's residence from Missouri to Louisiana, alleging the stepfather had obtained excellent employment there and she wanted to join him. On February 1, 1982, the father filed a motion to modify, seeking custody of the child.

Trial occurred March 5, 1982. On March 24, 1982, the court entered judgment granting the father custody of the child approximately 44 per cent of the year, and the mother custody approximately 56 per cent, this arrangement to be in effect until the child is enrolled in public school. When that occurs, the father is to have custody during the school year, and the mother is to have custody during the summer vacation and part of Christmas vacation. Each is to have visitation rights when the child is with the other. Neither is to pay child support.

The mother complains the court (a) abused its discretion in modifying the original custody order, and (b) erred in refusing to permit the mother's attorney to question the stepmother about an abortion and a venereal disease.

The mother, a high school graduate and licensed practical nurse, was 23 at time of trial. She and the stepfather planned to live in a two bedroom apartment with the stepfather's mother and the latter's husband in Slidell, Louisiana. Slidell is a thirty minute drive from downtown New Orleans, and an eleven to twelve hour drive from Webster County, Missouri. The mother intended to work in her vocation, there being "plenty of jobs available in the New Orleans area."

The stepfather, also a high school graduate and 23 at time of trial, lived in Slidell as a child. In December, 1981, he obtained employment operating a "tractor-trailer" and "forklift" at a shipbuilding company in New Orleans, earning more than twice what he had at his previous job in Springfield, Missouri. The husband of the stepfather's mother is a plant superintendent for the shipbuilding company.

When the mother and stepfather are both working, the child will be left with the stepfather's mother, or at a day-care center.

The father is a dairy farmer with a "66 cow herd" on 160 acres owned by his parents. At time of trial, the father was buying the land from his parents, and the father and stepmother had a four bedroom house under construction which they planned to occupy within two months. The father testified he had been a dairy farmer "since I was 23, 24; right after I got out of the service in '75." He was, therefore, around 30 at time of trial.

The stepmother is the father's third wife. She was pregnant at time of trial. The abortion and venereal disease about which the mother's attorney sought to question the stepmother occurred in 1979 when the stepmother was in high school. The stepmother was, evidently, around 20 at time of trial. She is employed at a restaurant as a cook-waitress, but testified she would not work days if the father got custody of the child, enabling her to take care of the child. The father's parents live 100 yards from the house the father and stepmother are building, and can take care of the child if the father and stepmother are busy. The father also has brothers and sisters in the area who can look after the child.

The father admitted the mother is a good mother and the child loves her. Uncontradicted evidence showed the stepfather and the child have an excellent relationship.

The mother admitted the father has a good relationship with the child and is capable of taking care of him. The mother also admitted the stepmother is "good" with the child.

As the mother's brief observes, the only controverted testimony concerned the mother's occasional denial of the father's visitation rights, and her reasons. Neither party requested findings on this issue, or any other, Rule 73.01(a)(2),[1] and the court made none.

The mother's first point is that the court abused its discretion in modifying the origi-

---

**1.** Rule references are to Missouri Rules of Civil Procedure.

nal custody order because the father failed to prove by a preponderance of the evidence that a change had occurred in the circumstances of the child or the mother since the dissolution and that modification was necessary to serve the child's best interests. § 452.410, RSMo 1978.

Contrary to the mother's assertion, changes in circumstances did occur. The mother married the stepfather and left Missouri to establish residence in Slidell, Louisiana, intending that the child live there too. Slidell is an eleven to twelve hour drive from the area where the father, the stepmother, the child's paternal grandparents, the father's siblings, and "about all" of the mother's family reside.

■ Removal from Missouri is one factor which may be considered in determining what is in the best interests of a child. *Knoblauch v. Jones,* 613 S.W.2d 161 at 166[4], (Mo.App.1981). It can be a decisive factor where the effect of the move is to wrench the child from the security of association with the noncustodial parent, family members and friends, and from accustomed surroundings. *Id.*

Such is the case here. In Louisiana, when the mother is working, the child will be with the stepfather's mother or at a day-care center. In Missouri, when the father is working, the child will be with the stepmother, the paternal grandparents or other members of the father's family, or possibly the mother's family.

In addition to changing residence, the mother admitted denying the father visitation "three or four times," and there was evidence of more interference than that. The mother justified some refusals because the child "was going through a stage where he was very hard to handle," and had been seen by a "child psychologist." The father testified the mother denied visitation on some occasions saying the child was "sick," but when the father asked whether the child had been to a doctor the mother replied, "No, he's not that sick."

■ Interference by a custodial parent with decretal rights of visitation by the other parent is a factor to be considered in determining the welfare of a child. *R.L.S. v. J.E.S.,* 522 S.W.2d 5 at 6[1], (Mo.App. 1975). Such conduct constitutes a changed condition which may justify and require a modification. *P_____ D_____ v. C_____ S_____,* 394 S.W.2d 437 at 446[12], (Mo. App.1965).

■ The extent of the mother's interference was disputed. As already noted, the trial court made no finding on the issue. It is therefore considered found in accordance with the result reached. Rule 73.01(a)(2).

■ A trial court's judgment ordering a change in custody of a child may be reversed on appeal only if the judgment is not supported by substantial evidence, is against the weight of the evidence, or resulted from an erroneous declaration or application of the law. *In re the Marriage of Griswold,* 623 S.W.2d 560 at 561[1], (Mo. App.1981); *Galeener v. Black,* 606 S.W.2d 245 at 246[2], (Mo.App.1980). So measured, the trial court's decision here must not be disturbed. In addition to the changed conditions, there was substantial and persuasive evidence that modification was necessary to serve the best interests of the child.

In Missouri, the child will receive full-time care by his family. In Louisiana, when the mother is working, the child will be with the stepfather's mother, or in a day-care center. In Missouri, the child will be close to the families of both his parents, a condition which will not exist in Louisiana.

The distance between the residences of father and mother prohibits frequent visitation. If the child is to have meaningful contact with both parents, substantial periods of custody by each is the only feasible plan. The need for maintaining the father-child relationship is highlighted by the mother's admission that she encourages the child to call the stepfather "daddy R_____."

■ We can and should indulge the presumption that the trial court considered all the evidence and decreed the custody of the

child by what it believed to be in his best interests and, in so doing, we must bear in mind that the trial court was in a better position not only to judge the credibility of the witnesses and the persons directly but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. L_____ E_____ (S_____) v. J_____ A_____ E_____, 507 S.W.2d 681 at 684[4], (Mo.App. 1974). We defer to the trial court's judgment unless it conflicts with the weight of the evidence and discloses a manifest abuse of discretion. *Eastes v. Eastes,* 590 S.W.2d 405 at 408[3], (Mo.App.1979). The modification here does neither.

The mother's first point is denied.

The mother's second point is that the trial court erred in prohibiting the mother's attorney from questioning the stepmother about the abortion and venereal disease.

Before presenting the father's evidence, the father's attorney moved that the mother be "excluded" from questioning the stepmother about those matters. The mother made an offer of proof, then this colloquy occurred:

> "THE COURT: For the record, let me ask Mr. Pratt[2] if there—if he has anyway [*sic*] of connecting the aforesaid behavior on the part of the father's present wife with an effect of any kind on the child?
>
> MR. PRATT: I have no medical or psychological evidence that would do that, Your Honor.
>
> THE COURT: Do you have any kind of evidence that could connect her aforesaid behavior with some effect that it might have on the child?
>
> MR. PRATT: No, sir. I simply believe that this is a matter that the Court consider—can consider and should consider along with the rest of the evidence."

The trial court ruled the evidence irrelevant and refused the offer.

▮ The mother correctly asserts that past conduct, character and morals of a

**2.** The mother's attorney.

stepparent are vital factors in evaluating the best interests of children. L_____ E_____ (S_____) v. J_____ A_____ E_____, supra, 507 S.W.2d at 685[7]. Here, however, there was nothing before the trial court to show how the offered evidence was relevant to those traits. The offer disclosed nothing about the circumstances under which the stepmother became pregnant, the conditions under which the abortion was performed, the person who performed it, the place where it occurred, or whether it was necessary to protect the stepmother's life or health. With respect to the venereal disease, there was no offer as to what the disease was, how long the stepmother had it, the circumstances under which it was contracted, or from whom.

▮ An offer of proof must show all facts necessary to establish admissibility of the testimony sought to be introduced, in sufficient detail to demonstrate its relevancy and materiality. *Hawkins v. Whittenberg,* 587 S.W.2d 358 at 363[11], (Mo.App. 1979). The offer must enable the trial court to intelligently rule upon, and an appellate court to review, the propriety and admissibility of the evidence sought to be elicited. *Hawkins v. Whittenberg,* supra, 587 S.W.2d at 363. We cannot convict the trial court of error on this record, particularly in view of the mother's attorney's statement that he could not connect the offered evidence with any effect on the child.

The mother's second point is denied.

Judgment affirmed.

GREENE, C.J., FLANIGAN, P.J., and TITUS, J., concur.