T. R. HODGES, Appellant, v. E. C. HILL, Respondent.

*Springfield Court of Appeals, December 11, 1913.*

1. **NEGLIGENCE: Evidence: Similar Specific Acts: Inadmissible.** In an action for negligence proof of similar specific acts of negligence, rather than a custom or a habit to do such acts, is properly rejected.

2. ——: ——: **General Reputation for Care or Negligence.** In an action for negligence it is not usually permissible to prove the general reputation of the party charged with negligence as to his being negligent or careful.

3. **EVIDENCE: Negligent Custom: Bearing on Specific Instance.** Proof of negligent custom is possibly admissible as tending to show negligence in an alleged instance of the custom.

4. ——: ——: **Restrictions.** Absent the question of evil intent, or of any intent, where the point to be determined is whether or not a person did a certain thing or did it in a particular way, the direct testimony thereon being in conflict,

evidence to show that such person was in the habit of doing the thing in question, or doing it in a particular way, is admissible but should be restricted and kept within narrow limits.

5. ————: Specific Acts of Negligence: General Reputation for Negligence. In an action for negligence proof of specific acts of carelessness or of the general reputation of a person as to being negligent or as to traits of negligence generally without reference to the particular act in issue, *held* inadmissible.

6. APPELLATE PRACTICE: Improper Evidence: Error Not Prejudicial: Reversal not Warranted. Where the facts of a case are such that a different result could hardly have been reached by the jury, though certain improper evidence may have been admitted, it appearing that the jury was not prejudiced thereby, a reversal is not warranted.

7. EVIDENCE: Res Gestae. In an action for damages for the killing of the plaintiff's mare by collision on a road with the horse and buggy of the defendant, statements of plaintiff's son, who was riding the mare, made at or just before starting on his way to the effect that he must go home in a hurry and that the mare was a fast traveler, *held* admissible as part of the *res gestae*.

8. APPELLATE PRACTICE: Evidence Reviewed: Reversal not Warranted. In an action for damages for the killing of plaintiff's mare by collision on a road with the horse and buggy of the defendant, evidence is examined and reviewed. *Held* that there was not such an admission of improper evidence as to warrant a reversal of the judgment.

Appeal from Lawrence Circuit Court.—*Hon. Carr McNatt,* Judge.

AFFIRMED.

*J. L. Maynard* and *I. V. McPherson* for appellant.

(1) Evidence of other accidents or injuries, from the same or similar cause or of other similar acts of negligence on the part of defendant is not admissible to show negligence in a particular case. Goble v. Kansas City, 148 Mo. 475; 29 Cyc. 611; Railroad v. Borders, 61 Ill. App. 55; Railroad v. Hodge, 55 Ill. App. 166; Calcaterra v. Iovaldi, 123 Mo. App. 350; Coale

v. Railroad, 60 Mo. 232; Connor v. Railroad, 181 Mo. 418; Perry v. Fort, 17 Mo. App. 218; Edwards v. Barber Asphalt Paving Co., 92 Mo. App. 91, 92; Smart v. Kansas City, 91 Mo. App. 594. (2) By the weight of authority evidence of plaintiff's habits and usual conduct as to a particular act or of his character for prudence or recklessness is not admissible on the question of contributory negligence. 29 Cyc. 619; Glass v. Railroad, 94 Ala. 581, 10 So. 215; Aiken v. Railroad, 184 Mass. 269; Guggenheim v. Railroad, 66 Mich. 150, 33 N. W. 161; Eppendorf v. Railroad, 69 N. Y. 195; Railroad v. McClish, 115 Fed. 268. (3) Declarations of an agent to bind a principal must be made at the very time he is doing an act he is authorized to do, and must be concerning the act he is then doing. Rogers v. McCune, 19 Mo. 557; Golson v. Ebert, 52 Mo. 270; Chillicothe ex rel. v. Raynard, 80 Mo. 189; Adams v. Railroad, 74 Mo. 556, 557, 558, 559; Carson v. Stockyards Co., 167 Mo. App. 444; Redman v. Railroad, 185 Mo. 11; Frye v. Railroad, 200 Mo. 377. (4) The defense of contributory negligence is an affirmative defense; the burden is upon the defendant to both plead and prove it. In the case at bar the defendant did plead the contributory negligence of the plaintiff's son. There was, however, no evidence introduced to warrant the court in submitting this defense to the jury. For this reason the giving of each of defendant's instructions B and C was error. Eckhard v. Transit Co., 190 Mo. 613, 614; Busching v. Gas Light Co., 73 Mo. 229; Eddington v. Railroad, 204 Mo. 67.

*William B. Skinner* for respondent.

(1) The weight of authority favors the view that where the direct evidence shows that an act was done or omitted, it is competent to prove that a custom existed prior to that time to do or not to do such act. Gillett's Indirect and Collateral Evidence, par. 68; Tramway Co. v. Owens, 36 Pac. (Cal.) 848; Sheldon

v. Railroad, 67 Am. Dec. (N. Y.) 155; Railroad v. Spilker, 33 N. E. 280, 34 N. E. (Ind.) 218; Shaber v. Railroad, 9 N. W. (Minn.) 575; Presby v. Railroad, Atl. (N. H.) 554; Henry v. Railroad, 50 Cal. 176. (2) Of the probative force of a person's habit or custom, as showing the doing, on a specified occasion of the act which is the subject of the habit or custom, there can be no doubt. 1 Wigmore on Evidence, par. 92-98. (3) In general when a habit of conduct is to be evidenced by specific instances there is no reason why they should not be resorted to for that purpose. 1 Wigmore on Evidence, par. 375-376; Commonwealth v. Ryan, 134 Mass. 223; State v. Railroad, 52 N. H. 528; State v. Railroad, 58 N. H. 410. (4) Likely, proof of a negligent custom is admissible as tending to show negligence in an alleged instance of the custom. Calcaterra v. Iovaldi, 123 Mo. App. 352.

STURGIS, J.—This lawsuit grows out of the fact that plaintiff lost a valuable mare by reason of a collision between such animal while being ridden by his son and a one-horse buggy being driven by defendant on the public road leading north from Stotts City, in Lawrence county, Missouri. This road is one of the "special roads" of the county, being sixty feet wide, in splendid condition and much used and traveled by the public. It was on this highway that plaintiff's mare was injured on the night of March 4, 1913. The night was a very dark one and the defendant, who had been out on his farm, was returning home, traveling south on this road. He was driving a small, gray pony, of uncertain age, hitched to a rather dilapidated buggy, without a top, and using ropes for lines. George Hodges, the son of plaintiff, about twenty years of age, who had been to Stotts City, was riding the mare in question, a large, fast pacing animal, and was returning to his father's home and traveling north on this same road. These two individuals, thus traveling,

collided with each other at or near a culvert in the
road some distance north of the town of Stotts City.
The result was that by force of the impact one of the
shafts of defendant's buggy penetrated the breast of
plaintiff's mare some six to nine inches, from the
effects of which she died two weeks later. The de-
fendant suffered no injury further than being thrown
from his buggy into a ditch and having the shaft of
his buggy splintered and the horse's harness somewhat
broken. The boy also says that he was thrown from
his horse into the ditch and received a bruised leg.
Each party admits that it was so dark that he did not
see the other until almost the time and place of the
collision. Each claims that he heard the other coming
down the road just before the collision and each claims
that he turned somewhat to the right, slowed up to
a practical stop and tried to let the other pass; each
claims that he was, at and before the collision, travel-
ing at a very moderate speed.

The plaintiff's petition charged that while his son
was riding along the road in a careful manner, the
defendant caused this injury to his mare by negli-
gently driving his buggy and horse at a high rate of
speed, thereby violently striking and running against
his mare. The defendant by his answer charged that
while he was with due care driving his horse and buggy
along this road, the plaintiff's son caused the injury
by riding the mare at a rapid rate of speed on this
highway and violently running her upon and against
his horse and buggy. The answer is treated as con-
taining a plea of contributory negligence but that is
hardly correct. Each party charged the other with
the same negligence and each charged that the negli-
gence of the other was the sole cause of the injury.
Neither party, either in his pleadings or evidence,
admits or even intimates that there was any concur-
rence of negligence but each maintains and the evi-
dence of each shows that the other was alone negli-

gent. No one witnessed the collision except the parties themselves and the·other evidence is largely circumstantial. The jury found for the defendant.

The main point relied on for reversal, and which is not without much difficulty, arises on the action of the trial court in permitting the defendant to prove, first by cross-examination of plaintiff's son, who rode the mare at the time of the accident, and afterward by independent witnesses, that the said son was accustomed to and had the habit of riding this mare along this road between his home and town at a rapid rate of speed. In this connection it was also shown, without objection, that the animal was a fast pacer of racing stock and had been in training on a race track on plaintiff's farm. Stated in a more general way, the question presented is whether, in order to prove that a person did a particular act amounting to negligence only and which is without moral turpitude or evil intent, it is competent to prove that such person had a habit or custom of doing such particular act.

While many kindred propositions have been before the courts of this State, learned counsel have not cited nor have we found a case in this State involving this precise question. The case nearest in point is that of Calcaterra v. Iovaldi, 123 Mo. App. 347, 100 S. W. 675, where Judge GOODE stated that the question was one of great difficulty, and, placing doubt on the correctness of the ruling, held that where a child was hurt by a barrel falling from defendant's second story window to the sidewalk, it was not competent to show negligence of defendant by proving that on other occasions barrels had fallen from the same window. The reasons assigned for rejecting the evidence are that it was not shown whether defendant was in any way connected with such act and that it would "raise collateral issues as to whether the incidents related actually occurred or not, and, if so, under what circumstances, and to spring a surprise on appel-

lants." It will be seen that the question there raised is quite different than the one here and some of the reasons for rejecting the evidence in that case do not apply here. Judge GOODE, as if to distinguish that case from one like this, said: "In certain classes of negligence cases, evidence of other negligent acts besides the one charged has been received, as tending to prove negligence in the act charged. It is said the collateral act may be proved if the inference may be drawn from it that the act charged was or was not negligent; but a study of the cases reveals, we think, that the admissibility of proof of the collateral act depends finally on the cogency of the proof it affords regarding the main issue—on whether it is so closely related to the main issue that its value as evidence is high enough to justify disregarding the objections to the reception, of proof of collateral acts." And again: "The competency of a collateral fact in a given case turns, as we have said, on whether or not the court deems its bearing on the main issue to be so intimate and valuable as proof of the main fact that the objections to collateral evidence may be disregarded. Obviously there will often be a diversity of views on such a matter; hence the conflict in the opinions dealing with the subject. Likely *proof of a negligent custom* is admissible as tending to show negligence in an alleged *instance of the custom.* [1 Wigmore, Evidence, sec. 97; Brunke v. Telephone Co., 115 Mo. App. 36, 90 S. W. 753.] In the present case the petition does not count on a custom or habit of appellants to throw barrels into the street; nor, indeed, can it be said the evidence received tended to establish such a custom. It simply showed, at most, that this was done on two occasions prior to the fatal accident; whether by an employee of appellants or a stranger, does not appear."

It will be seen that what the court did in that case was to reject proof of similar specific acts rather than

a custom or habit to do such acts and that ruling is good law. [1 Wigmore on Evidence, sec. 199.] This is also a different question than proving the general reputation of a party charged with negligence as to his being negligent or prudent, as that is not generally admissible. [1 Wigmore on Evidence, sec. 65.] But it is there said that this class of evidence must be distinguished from "habit, i. e., of prudent or negligent methods," as the latter is admissible. It is also a different question than proving that other similar accidents have arisen from the same or similar cause and such proof is generally rejected. [Smart v. Kansas City, 91 Mo. App. 586; Goble v. Kansas City, 148 Mo. 470, 50 S. W. 84; Calcaterra v. Iovaldi, 123 Mo. App. 347, 351, 100 S. W. 675.]

Many authorities will be found upholding the admissibility of evidence of the particular kind now under discussion. In 1 Wigmore on Evidence, sec. 92, the author says: "Of the probative value of a person's habit or custom, as showing the doing on a specific occasion of the act which is the subject of the habit or custom, there can be no doubt. Every day's experience and reasoning make it clear enough." Then, after stating some exceptions, the author adds: "Subject to the foregoing distinctions, the admissibility of a person's habit, usage, or custom as evidence that he did or did not do the act in question may be said to be universally conceded." [See also section 97, dealing with the admissibility of "habit of negligence."] "The weight of authority favors the view that where the direct evidence shows that an act was done or omitted, it is competent to prove that a custom existed prior to that time to do or not to do such act, as such evidence legitimately tends to uphold the theory of one of the contending parties." [Gillett's Indirect and Collateral Evidence, sec. 68.] The case of State v. Railroad, 52 N. H. 528, 529, is a leading case on that point. That was a case of personal in-

jury at a crossing in which the speed of the train became material. The court admitted proof of the usual rate of speed of that train, run by the same engineer, at the same crossing. This was held proper and the court said: "It would seem to be axiomatic that a man is likely to do or not to do a thing, or to do it or not to do it in a particular way, as he is in the habit of doing or not doing it. But this must be understood of acts which are done or omitted to be done without any particular intent or purpose to injure anyone; it cannot apply to acts that are done intentionally, wilfully, or maliciously, because such acts are done with a specific object in view, and they are performed, not by force of habit, but with a definite purpose. . . . But when the question is, did these servants of the road, without any intention whatever and through mere negligence or carelessness, omit to give these signals on that occasion, we think the inquiry was properly made as to what they had done before in that regard, and whether they had or had not grown habitually negligent of the requirements of the road in that particular. In this view of the case, we think the evidence was admissible—not as evidence of character, not as evidence of fitness or unfitness, but simply as having some tendency to show that on this particular occasion these agents were more probably negligent and careless because they had before frequently neglected the same duty with impunity and had thus become habitually negligent in that regard." The courts of New Hampshire have several times followed this ruling. In Smith v. Railroad, 47 Atl. (N. H.) 290, 291, the court said: "Cate's uniform habit of slackening the speed of his horse to a walk at the Waukewan crossing, and looking and listening for the approach of a train before attempting to pass the crossing, tended to show that he did so on his fatal trip. It was substantial evidence of the exercise of

175 Mo. App. 29

care on that occasion. Davis v. Railroad, 68 N. H. 247, 248, 44 Atl. 288, and authorities cited.'' [See also Stone v. Railroad, 55 Atl. (N. H.) 359.] The Supreme Court of California in Craven v. Pacific R. Co., 13 Pac. 878, in speaking of evidence as to a person's habit in jumping off a moving train, said: ''But when, in the absence of any question of evil intent, or of any intent at all, the point of fact to be determined is whether or not a person did a certain thing, or did it in a particular way, and the direct testimony as to the fact is conflicting, then evidence is admissible to show that he was in the habit of doing the thing in question, or accustomed to do it in a particular way. A sensible man called upon, out of court, to determine whether or not a certain person had, on a certain occasion, carelessly jumped off a moving train of cars, and finding the direct testimony as to the matter conflicting, would naturally and properly give some weight to the fact that the person was in the habit of alighting from cars in that manner; and the consideration of such a fact in cases resembling the one at bar has frequently been sanctioned in court. The evidence, at least, had some legal tendency to show that plaintiff's conduct at the time of the injury was such as defendant ascribed to her.'' In Louisville & N. R. Co. v. M'Clish, 115 Fed. 268, the Circuit Court of Appeals ruled just to the contrary. In Shaber v. Railway Co., 28 Minn. 103, 9 N. W. 575, the court said: ''Where the evidence is conflicting as to the speed in a particular instance, proof of the customary or habitual speed at which the engines of defendant ran under like circumstances may be given, to show that the evidence for plaintiff or for defendant is the more probable.'' The Appellate Court of Indiana in Pittsburgh, C., C. & St. L. Ry. Co. v. McNeil, 66 N. E. 777, 779, said: ''As we have said, the theory of appellant's defense was that appellee was injured by reason of his own negligence in jumping on its train while it

was moving. This rejected evidence was competent to go to the jury upon the theory that, as the appellee had been in the habit of jumping on moving trains at that particular place, the jury were entitled to consider that fact, as tending to corroborate the evidence of the witness who testified that he saw him, at the time he was injured, jumping on the train. The jurors, being sensible men, of fair reason and discernment, were called upon to determine the pivotal question in the case—as to the manner in which appellee was injured. As to this question there was direct conflicting evidence. The manner of the injury being in conflict, a sensible and reasonable man would naturally and properly give some weight to the fact that the injured party was in the habit of jumping on and off of moving trains in the manner indicated by one witness, on the reasonable and well-supported theory that a person is more likely to do or not to do a thing, or to do a thing or not to do it, in a particular way, as he is in the habit of doing or not doing it. The rejected evidence had a legal tendency to show that appellee's conduct at the time he was injured was such as appellant ascribed to him.'' [See also Chicago, St. L. & P. R. Co. v. Spilker, 33 N. E. (Ind.) 280.] The Supreme Court of Colorado in Denver Tramway Co. v. Owens, 36 Pac. 848, 854, said: ''If it had been proposed to show that the gripman had been in the service of the company for considerable time, and that it had been his particular habit or custom not to stop in the middle of the block, this would have lent corroboration to his testimony that he did not so stop; for, in case of doubt as to what a person has done, it may be considered more probable that he has done what he has been in the habit of doing than that he has acted otherwise. [Lawson, Usages and Cust., sec. 46; State v. Manchester & L. R. Co., 52 N. H. 549.]''

Several of the cases cited by appellant as supporting the proposition that this character of evidence is

not admissible are cases not strictly in point, as they relate to the proof of specific acts of carelessness or to the general reputation of a party as to being negligent, or as to traits of negligence generally without reference to the particular act in issue.    [Boick v. Bissell, 80 Mich. 260, 45 N. W. 55; Wooster v. Broadway R. Co., 72 Hun, 197; Glass v. Railroad, 94 Ala. 581, 10 So. 215; Aiken v. Railroad, 184 Mass. 269, 68 N. E. 238.]    The trend of these decisions, however, is against the admissibility of such evidence and other cases will be found to the same effect and more nearly in point.    [Eppendorf v. Railroad, 69 N. Y. 195; Guggenheim v. Railroad, 33 N. W. (Mich.) 161; Southern Kansas R. Co. v. Robbins, 23 Pac. 113; Maguire v. Railroad, 115 Mass. 239.]

The courts of Illinois seem to have adopted the rule that such evidence is admissible only in the absence of any direct evidence as to how the accident occurred.    [City of Salem v. Webster, 192 Ill. 369, 61 N. E. 323; Railroad v. Clark, 108 Ill. 113; Quincy Gas. Co. v. Clark, 109 Ill. App. 20; Cox v. Railroad, 92 Ill. App. 15.]    As this is not a question of resorting to secondary evidence, we fail to see the force of this distinction.    If the evidence has probative force and is otherwise admissible, then the fact that there is stronger and more direct evidence should not warrant its rejection.    The Supreme Court of Georgia, when confronted with this question in Savannah R. Co. v. Flanagan, 9 S. E. 471, 472, ruled thus:    "The habitual high speed of this same engine, when run previously by the same engineer, on the same street, was of doubtful admissibility.    The authorities upon the question conflict.    For the affirmative might be cited State v. Railroad Co., 58 N. H. 410; State v. Railroad Co., 52 N. H. 528; Shaber v. Railroad Co., 28 Minn. 103, 9 N. W. 575; Randall v. Telegraph Co., 54 Wis. 140, 11 N. W. 419; Craven v. Railroad Co., 72 Cal. 345, 13 Pac. 878; Henry v. Railroad Co., 50 Cal. 176; Sheldon v. Railroad Co.,

14 N. Y. 218.   For the negative, see Gahagen v. Railroad Co., 1 Allen, 187; Railroad Co. v. Lee, 60 Ill. 501; Railroad Co. v. Woodruff, 4 Md. 242; Parker v. Publishing Co., 69 Me. 173.   Patt. Ry. Accident Law, 421, throws the weight of his opinion on this side.   Upon so doubtful a question we think the court did not err in admitting the evidence.   There are several cases in our Reports holding that doubtful evidence is to be admitted, rather than excluded.   What has been said upon this point applies equally to evidence touching habitual failure to ring the bell.''

There is no doubt that the admissibility of this character of evidence should be restricted and kept within narrow limits.   The principal objection to its admissibility is that it raises collateral issues and detracts the attention of the jury from the real point at issue, to-wit, whether the party charged with negligence was negligent at the particular time in question, and that it raises issues which the opposite party will not be prepared to meet.   This objection is largely avoided when the evidence is confined to the general habit of the party with reference to the particular act in issue.   The jury should in such cases be made to understand the purpose and scope of the evidence.   We think this was done in this case.   The learned trial judge, when ruling on this question, said: ''Gentlemen, the evidence, as I understand it, it seems there is a sharp contest over the cause of this collision.   Contributory negligence is pleaded, and the contention is that one of the parties caused the injury, and the contention of the other side is that the other one.   There seems to have been no eyewitness except the two men. That may throw some light.   The manner in which the two men drove their buggies may throw some light to the jury as to who did the negligent acts that day, that brought on a collision, and I am going to let it go to the jury for what it is worth.   Under the law and the circumstances they will have to determine the truthful-

ness of these two men as to which one is telling the truth about the collision. Any circumstance which shows the habits of the two men might throw some light on it. He may tell what the habits of the boy was as to his own riding.'' While this was not an instruction to the jury, it had much the same effect and advised the jury at the time as to the only purpose for which the evidence was admitted. While the court refused an instruction altogether eliminating this evidence from the consideration of the jury, the court gave this instruction: ''You are further instructed that in determining the issue of whether or not plaintiff's son, George, was guilty of negligence at the time and place of the accident, causing, or contributing to cause, the injury, it is not material that plaintiff's said son at other or different times or occasions may have ridden on the highway at a rapid or fast rate of speed.'' We will, therefore, rule, though with some doubt as to its correctness, that the court did not commit reversible error in admitting this evidence.

The defendant was verging on still more dangerous ground on his cross-examination of plaintiff's son who was the rider of the injured mare, as to some specific incidents of fast riding—nearly running over a boy— and objection thereto should have been sustained. But as the boy explained the one incident mentioned so as to show him entirely blameless and denied other incidents inquired about, and no further evidence was offered as to these incidents, we will not hold same reversible error.

We are also convinced that none of the foregoing evidence so prejudiced the jury as to warrant a reversal, even if improperly admitted. The other facts of the case are such that a different result could have hardly been reached by the jury. The plaintiff's son was asked on cross-examination and denied that, at the time and in the very act of starting from town on this occasion, he stated that he must go home in a hurry on

account of having some work to do that night, and that he had a horse which could and that he would make the distance of two and a half miles in six to eight minutes. It is shown that he then started at a fast gait and he admits that he traveled fast for the first quarter of a mile and until he left the outskirts of the town. The defendant was then allowed to contradict and impeach this witness by proving by other witnesses who heard the same that he did make these statements. Besides this, these statements of the son are so intimately connected with his riding home as to be a part of the *res gestae* and were properly admitted. This is not a question of the statement of an agent being or not being binding on the principal, as the son was not in any proper sense the agent of his father in riding this horse. He must be treated as one of the actors and the fact that he was riding his father's horse instead of his own has little to do with the case. Then, there were other witnesses who saw him riding at a fast gait at various points on the road between town and the place of the accident. One witness, his grandfather, who lived about a quarter of a mile from the starting place, said that he wanted to speak to the boy and heard him coming, but before he could get to the door he was gone. Another witness saw him pass about one mile from town and only a short distance from the place of the accident and stated that he was then going a mile in three minutes. Another witness, still closer—250 yards—to the accident, stated that he was going like a "bat of lightning," and his evidence is sought to be discredited because the darkness of the night prevented his recognizing very clearly the fast flying phantom. This, however, was for the jury. The descriptions given by the witnesses of this boy's ride on this dark night as he approached the culvert in question on his flying steed reminds one of the description of the ride of Tam O'Shanter as he seeks to cross the bridge on his good nag, Meg, with the witches fast following:

"Now, do thy speedy utmost, Meg,
And win the key-stane of the brig;
There at them thou thy tail may toss,
A running stream they darena cross.
But ere the key-stane she could make,
The fient a tail she had to shake."

There is no question and the physical facts showed that defendant and his buggy were wrecked at a point some twenty to thirty feet north of the culvert on the west side of the road, where defendant says the horse struck him. The boy's evidence was that he stopped his horse just south of the culvert on the east side of the road and that the buggy struck his horse at that point. He admits, however, that when he got up and went to defendant's buggy it was twenty to thirty feet north of the culvert. It would seem impossible that if the buggy going at a rapid rate struck the horse standing still south of the culvert that the recoil could have driven the horse and buggy backward some thirty to forty feet. It is proper to here state that the record shows that defendant's buggy wheel skidded two or three feet to the northwest and not the southwest as claimed by appellant. It was also shown that defendant's horse was a worn-out, farm pony, that could hardly be whipped out of a walk. When we take into consideration the facts of this case, including the different "mounts" of these parties, we feel that a retrial could not result different from this one, and that the judgment should be and is affirmed.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.