Gayle **TRIMBLE**, now known as Gayle Kuebler, and Prentice E. Trimble, Plaintiffs-Respondents,

v.

Leland P. **SIPES**, Defendant,

and

Arthur E. Arnold, Defendant-Appellant.

No. 55980.

Supreme Court of Missouri, Division No. 2.

March 11, 1974.

Gregory D. O'Shea, St. Louis, Mo., for plaintiffs-respondents.

Murphy, Kortenhof & Ely, Edward E. Murphy, Jr., St. Louis, for defendant-appellant.

FINCH, Judge.

Gayle Trimble (hereinafter plaintiff) and her father brought suit for personal injuries and medical expenses as a result of plaintiff, a pedestrian, being struck by two motor vehicles operated by the defendants herein. Defendant Sipes did not file an answer or appear at the trial. The jury returned a verdict against both defendants for $25,000 in favor of plaintiff and $3000 for her father. Notice of appeal was filed by defendant Arnold on July 21, 1970, at which time the amount of the judgment vested appellate jurisdiction in this Court. We retain the case for decision. Mo. Const., Art. V, § 31(4), V.A.M.S. We reverse and remand.

Issues to be resolved are (1) the sufficiency of the evidence to make a submissible case, (2) whether plaintiff was guilty of contributory negligence as a matter of law, and (3) whether plaintiff's verdict directing instructions were erroneous in failing to refer to defendant's affirmative defense of contributory negligence.

The accident occurred at the intersection of Woodson Road, a through street which runs north and south, and North Avenue, which runs east and west. Plaintiff, an 18 year old high school senior, was enroute to an after school job. She walked west on North Avenue and when she reached Woodson Road, she looked both to the north and south on Woodson. Standing at the east side of Woodson, she could see approximately a block or 300 feet to the south and approximately two blocks to the north. The weather was clear and dry and visibility was good. Plaintiff saw no cars approaching and started across in the pedestrian walkway by a school stop on the south side of North Avenue. After she started across Woodson, plaintiff did not remember looking again to check on approaching traffic.

While plaintiff was still in the process of crossing the northbound lane of Woodson, she felt a thump to her left side and remembered a feeling of going through the air. She then saw another car coming toward her and felt another thump. She never saw the car which first hit her (Sipes' car) and only briefly saw the Arnold car. She could give no details as to its direction or operation.

A witness for plaintiff was Lynn Stephens, who was driving the second car behind defendant Sipes. He first observed plaintiff when she was crossing Woodson from east to west and was about half-way across the northbound lane. At that time, Sipes was about 60 feet away from plaintiff and was approaching at 25–30 miles per hour. Stephens testified that he saw plaintiff reach a point near the center line of Woodson Road, at which time she reversed her direction and headed back east. Sipes was then only about three feet away from her and she was hit by the left front side of the Sipes car (at a point just back of the left front wheel). She was spun around and knocked into contact with the left side of the southbound Arnold automobile. These two impacts occurred within approximately a second. Stephens estimated Arnold's speed at 25–30 miles per hour. Neither car swerved or slowed down before the impacts.

Defendant Arnold testified that as he drove south on Woodson he came to a stop two to three car lengths north of the North Avenue intersection because "there was a crossing guard there". While stopped he saw plaintiff standing on the east shoulder of the road about even with his car. A few seconds thereafter he started up, but he never again observed plaintiff. After traveling about two car lengths, his passenger said to him that the girl had been hit by the other car, and Arnold then stopped near the crosswalk south of the intersection. He fixed his maxi-

mum speed between the two stops at four to five miles per hour. He testified that he had no personal knowledge that he ever struck plaintiff or that she hit the side of his car. However, he did find smudge marks on the left rear fender of his car about two or three feet in front of the back bumper.

Clifford Gruendler, a passenger in the Arnold car, testified that when they stopped north of the intersection, he saw plaintiff standing on the east side of Woodson Road. She started across the street and he continued to watch her until the window and back door of the Arnold car got past her, at which time she was in the middle of the northbound lane. He heard but did not see the impact between plaintiff and the Sipes automobile. He then remarked to Arnold, "That girl got hit," and Arnold brought his car to a stop at about the crosswalk south of North Avenue. Gruendler did not feel any impact between plaintiff and the Arnold car but afterwards did observe small scuff marks on the left side of the Arnold car.

Defendant Arnold's first contention is that his motion for a directed verdict at the close of all the evidence should have been sustained because plaintiff failed to make a submissible case and because she was guilty of contributory negligence as a matter of law.

Plaintiff's case was submitted on disjunctive submissions of failure to keep a careful lookout, excessive speed, and failure to slacken speed or swerve after defendant Arnold knew or should have known that there was a reasonable likelihood of collision. If there was sufficient evidence to support any one of these asserted negligent acts, a submissible case was made.

■ We consider first whether the evidence was sufficient to show failure to keep a careful lookout. In Murphy v. Land, 420 S.W.2d 505, 509 (Mo.1967), this Court said: " 'It is good law that a person

driving an automobile along a city street must take note not only of persons who are actually in the pathway of danger, but of those who are approaching and apparently about to go into danger, and to act on such appearances.' Oliver v. Morgan, Mo.Sup., 73 S.W.2d 993, 996[6]. It was defendant's duty to keep a vigilant lookout both ahead and laterally. Williams v. Ricklemann, supra, 292 S.W.2d 276, 1. c. 281[6]; Wright v. Osborn, supra, 356 Mo. 382, 201 S.W.2d 935, 1. c. 938."

■ We need not be concerned in this case with whether Arnold could have seen plaintiff because his own testimony shows that he actually did see her when she was on the east shoulder of Woodson Road. At that time, according to Arnold, he was two to three car lengths north of the intersection of Woodson with North Avenue. Both Arnold and his passenger placed plaintiff on the east side of Woodson Road about even with the Arnold car. However, plaintiff's evidence (her testimony and that of Lynn Stephens) placed her at the crosswalk south of the intersection of Woodson and North Avenue, and that more favorable testimony must be accepted for purposes of determining the sufficiency of plaintiff's case. Placing plaintiff at that point results in a distance between her and Arnold when he saw her of two to three car lengths plus the width of North Avenue plus whatever distance it was from the south lane of North Avenue to the crosswalk.

Arnold testified that he did not observe plaintiff again after he first saw her east of Woodson Road. However, his passenger did watch her until she reached the middle of the northbound lane of Woodson Road. At that time, the evidence favorable to plaintiff was that the Sipes car was approaching from the south and was about 60 feet away from plaintiff, traveling 25–30 miles per hour. If Arnold had looked again or had continued to observe plaintiff, as his passenger did, he would have seen her walking into the pathway of the ap-

proaching northbound car and approaching an area of additional danger, to wit, the center line between the north and south-bound lanes of traffic. Such period of observation would have been several seconds. Witness Stephens testified it was two to three seconds from the time he saw her in the center of the northbound lane until she was hit. Added thereto would have been the time required to walk from the east shoulder to the center of the northbound lane. This time was sufficient to permit Arnold to observe plaintiff's plight and to permit him to do something about avoiding the danger of his automobile striking the plaintiff. Defendant argues that there was nothing to be seen to cause Arnold to take evasive action until plaintiff actually was struck by the Sipes car and thrown into the southbound lane, but the evidence does not support that contention.

We hold that a submissible case of failure to keep a careful lookout was made. This conclusion is consistent with prior decisions of this Court. Miller v. St. Louis Public Service Co., 389 S.W.2d 769 (Mo. 1965); Hartz v. Heimos, 352 S.W.2d 596 (Mo.1962); Headrick v. Dowdy, 450 S.W. 2d 161 (Mo.1970). This being true, defendant was not entitled to a directed verdict on the basis that no submissible case was made and we need not consider whether plaintiff made a submissible case on her other submissions of excessive speed and failure to slacken or swerve.

Defendant's second ground for claiming error in overruling his motion for a directed verdict is his contention that plaintiff was guilty of contributory negligence as a matter of law. He relies on the testimony of plaintiff that although she looked both ways and saw no approaching cars when she started to cross the street, she did not remember looking again for approaching automobiles.

This Court in Walsh v. Southtown Motors Co., 445 S.W.2d 342 (Mo.1969), discussed a pedestrian's duty of care in crossing a street. After preliminarily stating the duty to look in both directions to ascertain if a street can be crossed in safety, the Court then said, 445 S.W.2d 1. c. 348:

"* * * Whether by looking south once before leaving the curb, under the circumstances shown in evidence, plaintiff discharged her duty and obligation to exercise ordinary care for her own safety, or whether she was duty bound to look again when she reached the centerline, or again when she reached the last lane, were questions for the jury to determine, and not for the court to declare as a matter of law. Judge Cardozo stated the rule succinctly in Knapp v. Barrett, 216 N.Y. 226, 230, 110 N.E. 428: 'A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger. * * * *The law does not say how often he must look*, or precisely how far, or when or from where. *If*, for example, *he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again. * * * * If he has used his eyes, and has miscalculated the danger, he may still be free from fault. * * * *'* (Italics ours.) Plaintiff's duty to look to the south a second or third time was relative, not absolute. Romandel v. Kansas City Pub. Serv. Co., Mo.Sup., 254 S.W.2d 585, 591[10]. 'As a general rule a person is not required to look for danger when there is no cause to anticipate danger.' Williamson v. St. Louis Pub. Serv. Co., 363 Mo. 508, 252 S.W.2d 295, 299[5–8]; Farr v. Manzella, Mo.App., 362 S.W.2d 752, 755, 756[4–9]. This case is governed by the general rule that when a pedestrian, intending to cross a street, looks both ways, sees no automobile approaching and is injured in the crossing the question of whether in the exercise of ordinary care he should have continued to look to the right and left as he proceeded across the street is a question for the jury. Miller v. St. Louis Pub. Serv. Co., Mo.Sup., 389 S. W.2d 769, 773[6, 7]; Ginter v. O'Donoghue, Mo.App., 179 S.W. 732, 734[5, 6]; Brown

v. Conser Laundry Co., Mo.Sup., 246 S.W. 166, 169[2]."

■ Plaintiff testified that before starting to cross Woodson she looked both to the south and to the north and that she saw no cars approaching. Under the decision in Walsh v. Southtown Motors Co., supra, whether plaintiff was guilty of contributory negligence for not looking again was a jury question. It did not convict her of contributory negligence as a matter of law.[1] See also Miller v. St. Louis Public Service Co., supra, 389 S.W.2d 1. c. 773.

The issue of plaintiff's contributory negligence was submitted to the jury at defendant's request in Instruction No. 4. This was proper because, although plaintiff was not guilty of contributory negligence as a matter of law, there was sufficient evidence to make a jury issue of whether negligence on her part contributed to cause the accident. Under the testimony of Lynn Stephens, when plaintiff was in the middle of the northbound lane, the Sipes car was 60 feet to the south, approaching her at a rate of 25–30 miles per hour. There was nothing to prevent her from seeing the car if she had looked, and reasonable minds could conclude that if she had done so, she could have taken effective precautionary action.

■ Plaintiff's verdict directing Instructions Nos. 2 and 3 ignored the fact that the court was instructing the jury on contributory negligence. The instructions did not negate contributory negligence nor did they refer in any manner to Instruction No. 4. As this Court said in Ernst v. Schwartz, 445 S.W.2d 377, 378 (Mo.1969): "The problem is obvious. In Moore v. Ready Mixed Concrete Company, 329 S. W.2d 14 (Mo.1959), this court declared, 1.

c. 23: 'When plaintiff's verdict-directing instruction fails to refer to the defense of contributory negligence, and such defense is submitted in an instruction offered by the defendant, the result is a definite conflict between the two instructions. * * * The two instructions are not harmonious or consistent.' "

The procedural rule established in Moore v. Ready Mixed Concrete Company, supra, was recognized and formalized in Missouri Approved Jury Instructions (MAI). In MAI, 2d Ed., in the section "How to Use This Book," there is a discussion relative to negating affirmative defenses, p. LII. It points out that some verdict directing instructons have at their end an appropriate clause negating contributory negligence as required by Moore v. Ready Mixed Concrete Company, supra, but that when such is not the case, the verdict directing instruction should be modified to negate the affirmative defense in issue. Reference is made to the form shown in Instruction MAI 17.01.

In this instance, Instructions Nos. 2 and 3 were MAI 17.02 modified. The Notes on Use following that instruction direct that if an affirmative defense is an issue, the phrase "unless you believe plaintiff is not entitled to recover by reason of Instruction Number ———— (here insert number of affirmative defense instruction)" shall be added at the end of the verdict directing instruction. This was not done. A similar situation was presented to this Court in Ernst v. Schwartz, supra, and in that case this Court held that failure to add the "tail" to the verdict directing instruction as required by the foregoing directions constituted reversible error. We reaffirm that conclusion and hold that failure to include the "tail" on Instructions

1. Plaintiff's situation was not comparable to that of the plaintiff in cases such as Lee v. Zumbehl, 410 S.W.2d 79 (Mo. banc 1966), one of the cases relied upon by defendant. In that case, as this Court recognized in Walsh v. Southtown Motors Company, supra, plaintiff actually saw an approaching car and nevertheless walked into its path without ever looking again in the direction of the approaching car. The court held that plaintiff's own testimony convicted him of contributory negligence as a matter of law. This case was distinguished by the Court in Walsh v. Southtown Motors Co., supra.

Nos. 2 and 3 necessitates reversal and remand in this case.

Defendant also complains that verdict directing Instructions Nos. 2 and 3 were erroneous in that there was not sufficient evidence to justify the alternative submissions of excessive speed and failure to slacken or swerve. In view of our conclusion that this case must be remanded for new trial on account of certain deficiencies in Instructions Nos. 2 and 3, we need not consider whether they were bad for an additional reason. We observe, however, that while we do not know what the evidence will be on retrial, the plaintiff should examine carefully the question of whether such evidence justifies disjunctive submission of each of these submissions of negligence, and this is particularly true with respect to the submission of excessive speed.

Reversed and remanded.

All of the Judges concur.