Catherine HAWKINS, Administratrix of the Estate of Selma Mary Winfrey, Plaintiff-Appellant,

v.

Newell WHITTENBERG, Defendant-Respondent.

No. 10655.

Missouri Court of Appeals, Southern District, Division One.

Sept. 17, 1979.

John R. Courtney, Springfield, for plaintiff-appellant.

E. C. Curtis, Farrington, Curtis, Knauer & Hart, Springfield, for defendant-respondent.

FLANIGAN, Chief Judge.

Plaintiff, the administratrix of the estate of Mrs. Selma Winfrey, brought this wrongful death action against defendant Newell Whittenberg. The theory of the petition was that Mrs. Winfrey's death was caused by the negligence of defendant in the operation of his automobile on August 22, 1974, at the intersection of Commercial and Van Buren in Lebanon, Missouri. The petition alleged that defendant's automobile struck Mrs. Winfrey, a 77-year-old pedestrian, inflicting injuries which resulted in her death on January 19, 1975. Defendant admitted that the injuries sustained by Mrs. Winfrey were fatal. Mrs. Winfrey was survived by five adult children.

At the close of plaintiff's evidence the trial court sustained defendant's motion for directed verdict. Plaintiff appeals.

Plaintiff argues that the ruling of the trial court was erroneous in that plaintiff made a submissible case, both on the issue of defendant's liability and on the issue of damages. Plaintiff claims that the evidence was sufficient to submit to the jury the issue of defendant's negligence in failing to keep a careful lookout. Plaintiff also claims that the trial court erred in rejecting plaintiff's offer of proof with respect to a habit of Mrs. Winfrey.

In seeking to uphold the ruling of the trial court, defendant argues that plaintiff failed to make a submissible case on the issue of defendant's failure to keep a careful lookout and also argues that plaintiff's evidence was insufficient to show that Mrs. Winfrey's children, as the statutory beneficiaries, sustained any pecuniary loss as a result of her death.

In *Boyle v. Colonial Life Ins. Co. of America*, 525 S.W.2d 811 (Mo.App.1975), the western district of this court set forth the principles which govern review of the action of the trial court in sustaining a defense motion for a directed verdict offered at the close of plaintiff's evidence. It stated, at 814, that such a ruling "is a drastic one," and is proper only when "all of the evidence and the reasonable inferences to be drawn therefrom are so strongly against plaintiff that there is no room for reasonable minds to differ." The court also said, at 815, "the plaintiff is entitled to the most favorable view of all the evidence and must be given the benefit of all favorable inferences to be drawn therefrom."

On the issue of liability plaintiff introduced the testimony of Joel Richards, Jerry Rhoads, and portions of the deposition of the defendant. Plaintiff also introduced three photographs of the scene. On the basis of that evidence the jury reasonably could have found the following facts.

Commercial Street runs east and west and Van Buren Street runs north and south. The junction of the two streets is a T intersection, the intersection being the southern terminus of Van Buren.

The accident occurred at 8:52 a. m. on August 22, 1974. The defendant was driving a Chrysler Imperial automobile. Prior to the impact the defendant was traveling east on Commercial with the intention of making a left turn onto Van Buren. As he traveled east on Commercial there was no westbound traffic on that street. As he commenced his turn the defendant's speed was 20 miles per hour "at the very most."

Plaintiff introduced the following portions of defendant's deposition:

"Q. After you started into your left hand turn, you saw you had it clear, no westbound traffic on Commercial, did you then accelerate and continue on in a generally northwardly direction on Van Buren?

A. Very slow.

Q. Very slow, but you maintained the speed did you?

A. After I turned the corner.

Q. Did you maintain the speed or did you increase it or diminish?

A. No, I didn't increase it.

Q. Did you maintain it?

A. Just about maintained it because just a short turn you turn right again.

Q. All right. Did you at any time see a lady by the name of Selma Mary Winfrey?

A. I did not see nobody.

Q. Did you feel your car come into contact with . . .

A. I did but it was—I can explain it this way. Have you ever run over a limb out on the side of the road or anything and you know how it sounds? Well, now, that is just how it sounded, just like I had run over a limb.

Q. Were you keeping a lookout for pedestrians or any animals or anything that might be in your approach?

A. I usually don't look for cats and dogs.

Q. Were you generally looking to the front?

A. I always do.

Q. In the road, and you did not see her did you?

A. I did not see her.

.    .    .    .    .

Q. What caused you to apply your brakes? When you looked up in your reverse mirror?

A. When I looked up in the reverse mirror I was wondering why a limb was out there and I looked up to see what kind of a limb was out there and what I did, and that is how come me to look back in the mirror.

.    .    .

Q. Just so the record is absolutely clear, your testimony is that you never saw this woman prior to looking up in your rearview mirror and seeing her?

A. You mean there at the time?

Q. Yes.

A. I never seen her at all.

Q. Okay.

A. Until I looked up in my rearview mirror.

Q. You never saw her until you felt two bumps, you looked up in your rearview mirror and then you saw her?

A. That is right."

Defendant also testified that Mrs. Winfrey was lying 20 or 30 feet north of the north curb line of Commercial. When he felt the two bumps his speed was about 15 miles per hour and his car was "still angling in the turn," not yet straightened out on Van Buren.

Joel Richards, the policeman who investigated the accident, interviewed the defendant at the scene. The defendant told Richards that "when I made the corner I felt a rough spot, I felt like I had hit something. . . . I must have hit Mrs. Winfrey because when I looked in the rearview mirror there was no one between me and her."

There was a telephone pole at the northeast corner of the intersection and Mrs. Winfrey's body was lying in Van Buren

Street 34½ feet north of the pole. Richards testified that there was "a blood smear on the pavement and I believe Mrs. Winfrey was dragged approximately five feet as a result of the accident." Her body was in the right or northbound lane of Van Buren which is a two-lane street.

Richards conducted an inspection of the defendant's vehicle which included placing it on a lift at a service station so that he could check its underside. The inspection failed to disclose any blood, hair, "disturbance of dust on the car" or any other indication of what portion of the vehicle it was which figured in the impact with Mrs. Winfrey.

Jerry Rhoads was at his place of employment "right at the intersection." He did not see the impact but did see Mrs. Winfrey lying in the street "about 15 feet from the sidewalk which runs east and west on the north side of Commercial." The north edge of the sidewalk was approximately 9 feet north of the telephone pole. Rhoads did not see any "tree limbs or sticks or anything on Van Buren" and "Van Buren was in good condition."

■ Negligence, consisting of a driver's failure to keep a careful lookout, is not to be submitted to the jury unless there is substantial evidence from which the jury could find that the driver, in the exercise of the highest degree of care to keep a careful lookout, could have seen the other vehicle or person in time thereafter to have taken "effective precautionary action." *Heberer v. Duncan*, 449 S.W.2d 561, 563[3] (Mo. banc 1970); *Bunch v. McMillian*, 568 S.W.2d 809, 811[3] (Mo.App.1978). To support the giving of a lookout instruction there must be evidence to support a finding that the driver, charged with failing to keep a careful lookout, could have avoided the collision by means which he possessed but failed to use. *Lovelace v. Reed*, 486 S.W.2d 417, 419 (Mo. 1972); *Miller v. St. Louis Public Service Co.*, 389 S.W.2d 769, 772[3, 4] (Mo. 1965).

"Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signalling equipment with which to warn, or braking appliances with which to slow down or stop, but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged [with failure to keep a careful lookout] to take effective action in avoidance." *Zalle v. Underwood*, 372 S.W.2d 98, 102[2] (Mo. 1963).

■ The mere happening of the accident, tragic as it was, does not establish negligence on the part of defendant. *Harris v. Lane*, 379 S.W.2d 635, 638 (Mo.App.1964).

■ To be actionable, negligence must be a proximate cause of injury and that general principle applies when the specific negligence involved is that of failure to keep a careful lookout. *Shelton v. Bruner*, 449 S.W.2d 673, 679–680 (Mo.App.1969). On plaintiff rested the burden of showing a causal connection between such negligence and decedent's injuries although such connection may be shown by proof of facts and circumstances from which it may reasonably be inferred. If the evidence leaves the element of causal connection "in the nebulous twilight of speculation, conjecture and surmise," plaintiff did not carry her burden. *Shelton*, supra, at 680.

■ It is true that a person driving an automobile along a city street "must take note not only of persons who are actually in the pathway of danger, but of those who are approaching and apparently about to go into danger, and to act on such appearances." *Trimble v. Sipes*, 506 S.W.2d 353, 355[1] (Mo.1974). It was defendant's duty to keep a lookout ahead and laterally. *Williams v. Ricklemann*, 292 S.W.2d 276, 281[6] (Mo.1956); *Trimble*, supra, at 355; *Evett v. Corbin*, 305 S.W.2d 469, 472[2] (Mo.1957). "This included the duty to see an observable pedestrian even though he was on the shoulder of the highway." *Harris v. Lane*, supra, 379 S.W.2d at 638[1].

"The object and purpose of the strict requirement that persons operating motor vehicles keep a proper lookout upon public streets and highways is that they may ac-

quire knowledge of the presence of other persons and objects on such streets and highways, and an *awareness of dangerous situations and conditions.* It is only because of that knowledge and awareness that the operators of motor vehicles may take appropriate precautionary measures to avoid injury to themselves and other persons *within an existing area of peril.*" (Emphasis added.) *Miller v. St. Louis Public Service Company,* supra, 389 S.W.2d at 771[2]

■ The duty to keep a careful lookout and the concomitant duty to take "effective precautionary action" do not arise at precisely the same moment. *Thomas v. Wade,* 361 S.W.2d 671, 674 (Mo. banc 1962); *Graham v. Conner,* 412 S.W.2d 193, 202 (Mo. App.1967).

"The question then is, when does the duty to act arise? It is not necessarily at the exact time there was a duty to see. Under the facts of this case, if the duty to see and the duty to act arose at the precise time, then under plaintiff's theory every motorist driving on a city street would have to slow, stop, warn, or slacken his speed every time he saw or should have seen a child or elderly person, or possibly any person, on the sidewalk *even though not approaching the street or the path of the vehicle.* While it may be stated in various ways, and possibly in ways better than the manner it was expressed in Instruction No. 4, *the duty to act* when one does or should see *arises at the time that a person, in the exercise of the highest degree of care, knew or should have known that there was danger, that is, a likelihood of injury.*" (Emphasis added.) *Thomas v. Wade,* supra, 361 S.W.2d at 674.

In an automobile-pedestrian case the western district of this court pointed out that evidence of the relative positions of the automobile and the pedestrian with respect to the point of impact, *"when defendant could and should have seen [the pedestrian] in a position fraught with danger,"* was necessary in order to justify a finding by the jury that the defendant thereafter had the time, distance, means and ability to take effective precautionary action to avoid

striking the pedestrian. *Wallander v. Hicks,* 526 S.W.2d 848, 851[3–4] (Mo.App. 1975). See also *Harris v. Lane,* supra.

In the case at bar "no inference could have been drawn and no finding could have been made, other than by forbidden resort to unbridled conjecture, rank surmise and palpable guesswork," *Graham v. Conner,* supra, 412 S.W.2d at 202, with respect to the following: (a) the initial position of Mrs. Winfrey—that is her location when she first could and should have been seen by defendant; (b) the location of defendant's automobile at that time; (c) where Mrs. Winfrey then was looking; (d) what her bodily position then was; (e) whether Mrs. Winfrey then was in motion or not; (f) if Mrs. Winfrey was moving, in what direction; (g) the distance, if any, between Mrs. Winfrey's initial position and the point of impact; (h) the speed or speeds with which Mrs. Winfrey moved if she in fact did move from her initial position to the point of impact and her course or courses in getting there; (i) the location of the point of impact; (j) whether defendant's automobile "ran into [Mrs. Winfrey] or [Mrs. Winfrey] ran into the automobile," *Graham,* supra, at 203, and what part of the automobile she contacted; (k) the nature and condition of the equipment on defendant's automobile, i. e., the means available to him for the taking of "effective precautionary action."

■ The foregoing deficiencies in the record demonstrate that plaintiff did not make a submissible case of actionable negligence on the part of defendant in failing to keep a careful lookout. In fine, there was no showing of what a careful lookout would have disclosed and what "effective precautionary action" defendant could (and, in the exercise of the highest degree of care, should) have taken, with the means available, in light of that disclosure.

Plaintiff seeks to supply some of the foregoing evidentiary deficiencies by asserting that the trial court erred in rejecting plaintiff's offer of proof with respect to a habit of Mrs. Winfrey. The purported offer of proof consisted of the following statement made by plaintiff's counsel to the trial court:

"[M]y offer of proof would be that I have two witnesses that would testify that they had known this woman over a lifetime and had walked with her upon numerous occasions and not upon one of those occasions did she ever cross the street other than at a cross walk."

■ An offer of proof should be "specific and definite" and not a mere statement of conclusions of counsel. *Kinzel v. West Park Inv. Corp.*, 330 S.W.2d 792, 796[4] (Mo.1959). An offer of proof must show all of the facts necessary to establish the admissibility of the testimony sought to be introduced, *Byam v. Kansas City Public Service Co.*, 328 Mo. 813, 41 S.W.2d 945, 952 (1931), in sufficient detail to demonstrate its relevancy and materiality. *Stipp v. Tsutomi Karasawa*, 318 S.W.2d 172, 175[5] (Mo. 1958). It may be assumed that the party making an offer of proof will state it as favorably as he can. *Rutledge v. Baldi*, 392 S.W.2d 244, 248[4] (Mo.1965).

It has been said that "[i]t has long been the rule in this state that the proper procedure to present and preserve such an offer is to have the witnesses present; put them on the stand; propound the questions; and thus enable the trial court to intelligently rule upon, and an appellate court to review, the propriety and admissibility of the evidence sought to be elicited." (Citing authorities.) *State v. Sullivan*, 553 S.W.2d 510, 513[2] (Mo.App.1977).

It is at least arguable that the foregoing offer of proof fails to meet the requirement of specificity. Plaintiff construes the offer to be equivalent to a showing that Mrs. Winfrey had a "careful habit of crossing streets only at intersections" and "within a crosswalk if one were available."

A careful reading of the offer of proof discloses that it does not show where the walking was done and whether or not it involved the habitual crossing of streets. Arguably the offer could be satisfied by a showing that, although considerable walking may have been involved, she crossed a street only once and in so doing used a crosswalk.

■ Even if the offer is accorded a liberal construction and is given the meaning which plaintiff ascribes to it, the outcome of this appeal is not altered. The only Missouri authority plaintiff cites in support of the admissibility of the offer is *Gerhard v. Terminal Railroad Ass'n of St. Louis*, 299 S.W.2d 866 (Mo. banc 1957), a case based on Illinois law. At p. 872 the court said:

"In cases where no eyewitness to a fatal event is available, the jury may consider, along with the evidence, the natural instinct of men to avoid injury and the plaintiff is permitted to prove the ordinarily careful habits of decedent as tending to prove his freedom from contributory negligence. However, where there are eyewitnesses, as in the instant case, plaintiff cannot rely on the presumption or make such proof. *Elliott v. Elgin, J. & E. Ry. Co.*, 325 Ill.App. 161, 59 N.E.2d 486. He does not contend otherwise."

On rare occasions Missouri courts have dealt with the general topic of the admissibility of evidence pertaining to a habit of a person. In *Hodges v. Hill*, 175 Mo.App. 441, 161 S.W. 633 (1913) there was a collision between defendant's horse and buggy and plaintiff's mare which was being ridden by plaintiff's son. The court stated that evidence that the plaintiff's son was in the habit of riding the mare along the highway at the place of the accident at a high rate of speed was admissible. The court cautioned, however, that "the admissibility of this character of evidence should be restricted and kept within narrow limits. The principal objection to its admissibility is that it raises collateral issues and detracts the attention of the jury from the real point at issue, to wit, whether the party charged with negligence was negligent at the particular time in question, and that it raises issues which the opposite party will not be prepared to meet. This objection is largely avoided when the evidence is confined to the general habit of the party with reference to the particular act in issue." *Hodges* at 636. The value of *Hodges* as a precedent, however, is questionable because the court itself expressed "some doubt as to its

correctness" and stated also that the evidence did not prejudice the jury "even if improperly admitted."

Other Missouri cases[1] and foreign authorities[2] in the general area are cited below.

Even if the offer of proof be regarded as a showing that Mrs. Winfrey had the habit, when crossing streets, to do so at crosswalks, most of the evidentiary deficiencies enumerated above remain unanswered. Even if plaintiff is given the benefit of her offer of proof, the record was insufficient to submit to the jury the issue of defendant's negligence in failing to keep a careful lookout. Accordingly, it is unnecessary to consider the sufficiency of the evidence on the issue of damages.

The judgment is affirmed.

TITUS, P. J., and CAMPBELL, HENRY and BARKER, Special Judges, concur.

1. "The issue was distinctly made. Plaintiff asserted he was shoved off the train by the conductor. The defendant's witnesses testified he jumped and fell. On the part of defendant it was shown that plaintiff was in the habit of getting on defendant's trains at this station, and riding several hundred feet, and dropping off. As explanatory of the accident and injury, in connection with the other evidence, we think this was competent evidence. It was confined to plaintiff's own conduct at this particular station." *Preston v. Hannibal & St. J. R. Co.*, 132 Mo. 111, 33 S.W. 783 (1896).

"There is authority for the proposition that, in the absence of eyewitnesses to an accident, proof of the ordinarily careful habits of the decedent is permitted as tending to prove his freedom from contributory negligence, provided that such evidence be not too remote as to time, place and circumstances. *Gerhard v. Terminal R. Ass'n of St. Louis*, Mo. (banc), 299 S.W.2d 866, 872(12); *Elliott v. Elgin, J. & E. Ry. Co.*, 325 Ill.App. 161, 59 N.E.2d 486, 492–493(9); 25A C.J.S. Death § 84, pp. 833–834. We find it unnecessary to express any opinion as to the legal validity of that proposition, for the evidence concerning the habits and record of instant plaintiffs' decedent was received without objection or motion to strike and, therefore, its probative worth and effect were for the jury." *Walker v. Massey*, 417 S.W.2d 14, 24 (Mo.App.1967).

2. "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the pres-

ence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Rule 406-Federal Rules of Evidence-28 U.S.C.A.

"A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time or of giving the hand signal for a left turn or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic. . . . [S]urely any sensible man in investigating whether X did a particular act would be greatly helped in his inquiry by evidence as to whether he was in the habit of doing it. . . . Nevertheless, the judge should possess the discretion usual in this field of circumstantial evidence to exclude if the habit is not sufficiently regular and uniform, or the circumstances sufficiently similar to outweigh the danger, if any, of prejudice or confusion." McCormick on Evidence, 2d Edition, § 195, pp. 462–463.

Where a habit of specific conduct is shown, the requirement that there be no eyewitnesses has been criticized and eliminated. See *Glatt v. Feist*, 156 N.W.2d 819 (N.D.1968), holding, where eyewitnesses disagreed, that evidence of plaintiff's habit of jaywalking at a particular spot was admissible.

See 28 A.L.R.3d 1293 (Evidence-Habits of pedestrian). See also 81 Am.Jur.2d Autos. and High. Traf. § 940, p. 486.